2023 IL App (1st) 192232

No. 1-19-2232

Opinion filed April 19, 2023

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 03 CR 28580 |
| | ) | |
| GREGORY JAMES, | ) | Honorable |
| | ) | Pamela M. Leeming, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BURKE delivered the judgment of the court, with opinion.
Justice Reyes concurred in the judgment and opinion.
Justice D.B. Walker concurred in part and dissented in part, with opinion.

**OPINION**

¶ 1    Following a jury trial, defendant Gregory James was found guilty of first degree murder based on felony murder and accountability. He was sentenced to 33 years' imprisonment, and we affirmed his conviction on direct appeal. *People v. James*, 2013 IL App (1st) 112110. Defendant filed a petition for postconviction relief, alleging that his rights to self-representation and a speedy trial were violated and that trial and appellate counsel rendered ineffective assistance. Defendant now appeals from the second-stage dismissal of his petition, contending that appointed postconviction counsel rendered unreasonable assistance because she failed to make necessary

amendments to his *pro se* petition and failed to argue against the State's motion to dismiss it. He also argues that his petition makes a substantial showing that trial counsel rendered ineffective assistance by failing to present evidence in support of two motions to suppress defendant's statements. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3      Defendant was charged with 15 counts of first degree murder (720 ILCS 5/9-1(a)(1)-(3) (West 2002)), 2 counts of home invasion (*id.* § 12-11(a)(1)-(2)), 1 count of armed robbery (*id.* § 18-2(a)(1)), and 3 counts of residential burglary (*id.* § 19-3) arising out of the homicide of Edward Mikutis in Berwyn on October 21, 2003. We previously detailed the evidence at trial in our opinion resolving defendant's direct appeal. See *James*, 2013 IL App (1st) 112110. This appeal concerns only defendant's claims of ineffective assistance of counsel in pretrial and postconviction proceedings. So we recite only those facts that are germane to the issues raised in this appeal.

¶ 4      Defendant was arrested in Berwyn on October 22, 2003, for Mikutis's murder and unrelated possession of a controlled substance (PCS). That day, Berwyn detectives and an assistant state's attorney (ASA) questioned defendant about Mikutis's murder at the Berwyn police station. He gave an alibi and was charged with PCS but not Mikutis's murder. Following a bond hearing in the PCS case, defendant was detained in Cook County jail. Berwyn detectives and an ASA interviewed defendant again on December 1, 2003, and he gave a statement implicating himself in Mikutis's murder. Defendant was charged with the murder and related property crimes on December 22, 2003.

¶ 5                          A. Defendant's Motions to Suppress

¶ 6    Defendant filed several pretrial motions to suppress his statements of October 22 and December 1, 2003. He alleged that, on October 22, 2003, Berwyn police physically abused him, tased him, and kept him naked in a cell without medical treatment. Police justified this treatment of defendant by falsely claiming that he attempted to hang himself in his cell and had to be forcibly restrained. Approximately six weeks later, on December 1, 2003, the same Berwyn detectives removed defendant from Cook County jail and interrogated him without notifying the attorney whom they knew represented defendant in the pending PCS case. The December 1 interrogation resulted in defendant making an inculpatory statement.

¶ 7    Prior to hearing evidence on the motions to suppress, the trial court heard legal arguments from the parties and ruled that Berwyn police did not violate defendant's right to counsel by interviewing him about Mikutis's murder December 1, 2003, even though defendant was represented by counsel in the PCS case that was pending at that time. The court found that "having counsel on one case does not grant you the same counsel on the other case."

¶ 8    At hearings on defendant's motions, Berwyn detectives Thomas Tate and Ramon Ortiz and ASA Steven Krueger testified that they interviewed defendant, whom they identified in court, at the Berwyn police station at approximately 4:30 p.m. and 7 p.m. on October 22, 2003. During the second interview, Krueger read *Miranda* warnings to defendant from a preprinted card, which the State moved into evidence. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Defendant indicated that he understood his rights but refused to sign a form documenting as much. Defendant agreed to speak with Krueger and the detectives and gave an alibi regarding Mikutis's murder. Defendant did not request medical attention or complain to Krueger of mistreatment by Berwyn police. He did not appear to be injured, but he was wearing a hospital gown because his clothes had been

taken as evidence. The detectives denied that they were physically abusive or threatening toward defendant.

¶ 9     Detective Luis Mazza testified that he saw defendant, whom he identified in court, attempting to hang himself with a shirt in a Berwyn police station cell at approximately 10:30 p.m. on October 22, 2003. Mazza and three other officers were involved in a "fight" with defendant while trying to subdue him, and Mazza used his Taser twice on defendant. During this altercation, defendant was flailing, spitting, and threatening to infect the officers. Defendant was eventually handcuffed and shackled and taken to another cell. He received no medical treatment.

¶ 10    Officer Salvador Gamino testified that he saw defendant, whom he identified in court, in a cell at the Berwyn police station at approximately 7 a.m. on October 23, 2003. Defendant was naked but was not handcuffed or shackled. Defendant asked Gamino for medical assistance, and Gamino notified his supervisors, who spoke to defendant, who then said that he did not need medical attention.

¶ 11    Officer Claudio Paolucci testified that he was the watch commander at the Berwyn police station on October 23, 2003. Another officer said that defendant requested medical attention, and Paolucci told him to call for an ambulance. However, no ambulance was dispatched because defendant later indicated that he did not want medical attention.

¶ 12    Detective Tate further testified that, on November 30, 2003, he decided to reinterview defendant based on information that he learned during an interview of Lee Stapleton, defendant's eventual codefendant. On December 1, 2003, Tate and Ortiz transported defendant from Cook County jail to the Berwyn police station. The detectives did not notify anyone, aside from jail staff, that they were going to interview defendant. At the station, Tate advised defendant of his *Miranda*

rights, and defendant indicated that he understood them. Tate told defendant that Stapleton had identified him as the "main actor" in Mikutis's murder, and defendant made a statement implicating himself in that murder. Defendant did not ask for an attorney.

¶ 13    That afternoon, ASA Maureen O'Brien interviewed defendant at the Berwyn police station. She advised defendant of his *Miranda* rights, and defendant signed a form indicating that he understood them. Defendant also signed a form indicating that he did not consent to his statement being video recorded. O'Brien handwrote a statement during her interview of defendant, which defendant read, made corrections to, and signed. The State moved into evidence the forms that defendant signed, as well as the portions of his statement that indicated that he had been advised of and understood his rights, that he had been treated well by police and O'Brien, and that he gave his statement voluntarily. During his interview with O'Brien, defendant never indicated that he wanted to remain silent or that he wanted an attorney.

¶ 14    In summation, defendant argued that Berwyn police physically and mentally abused him on October 22 and 23, 2003, to break him down for a future interrogation. Defendant contended that his inculpatory statement on December 1 was coerced because he feared that he would be abused like he had been in October if he did not cooperate with police. In response, the State argued that approximately six weeks elapsed between the alleged physical abuse of defendant in October and his confession in December, so there was no reason to believe that the alleged physical abuse produced defendant's inculpatory statement.

¶ 15    The trial court denied defendant's motions to suppress. The court found that defendant's October 22, 2003, statement was voluntary because it occurred prior to any use of force or injury. The court also concluded that defendant's inculpatory statement of December 1, 2003, was

voluntary because the statement itself and the *Miranda* form that defendant signed said as much. In addition, the court reasoned that any force Berwyn police used to restrain defendant following his suicide attempt on October 22 or 23 had no connection to, and did not coerce, his statement six weeks later on December 1. Defendant filed a motion to reconsider the denial of his motions to suppress his statements, which the trial court denied.

¶ 16                                B. Trial and Direct Appeal

¶ 17    At trial, Mikutis's girlfriend Cynthia Hayden testified that she owed defendant, whom she identified in court, money for crack cocaine on October 21, 2003. The following morning, she found Mikutis dead on the living room floor of his home in Berwyn. Mikutis had been stabbed twice in the abdomen and suffocated due to duct tape wrapped around his face and head. His house was in disarray. Berwyn police arrested defendant that day based on both the murder and an unrelated drug investigation when he happened to visit the apartment of a witness who police were interviewing.

¶ 18    O'Brien testified to the written statements that she obtained from defendant and Stapleton. Defendant's statement of December 1, 2003, indicated that, on October 21, 2003, Hayden wanted to buy cocaine from defendant and said that she would pay with Mikutis's belongings. At approximately 10:30 p.m., defendant and Stapleton went to Mikutis's house and found him home alone. Stapleton grabbed Mikutis around the neck while brandishing a knife. Defendant demanded money from Mikutis and began searching his house. Mikutis tried to attack defendant, so defendant restrained Mikutis while Stapleton taped his legs, hands, and mouth. Stapleton also stabbed Mikutis in the side with a sword that defendant found in the house. After some time, defendant

knew that Mikutis had died because he was no longer moving. Stapleton and defendant left Mikutis's house with the sword and cash.

¶ 19    Stapleton's statements of November 30 and December 1, 2003, agreed that he accompanied defendant to Mikutis's house on the night of October 21, 2003, to collect a drug debt that Hayden owed to defendant. But, according to Stapleton, it was defendant who stabbed Mikutis in the side two times. Stapleton also claimed that he restrained Mikutis while defendant duct taped his ankles, hands, and mouth and then suffocated him until he died. Stapleton went to defendant's apartment, and defendant arrived shortly thereafter with a sword, coins, and jewelry.

¶ 20    Called by the State at trial, Stapleton testified that he knew defendant, whom he identified in court. Hayden owed Stapleton approximately $100 for crack cocaine in October 2003; she did not owe defendant money for drugs. Stapleton testified that he alone was responsible for Mikutis's murder. Stapleton testified that he stabbed Mikutis twice, pinned him down, bound him with duct tape, and suffocated him while defendant stood by. Stapleton also admitted that he searched Mikutis's house for money while defendant was outside and that he took coins, jewelry, and a sword from the house to defendant's apartment. Stapleton largely denied the substance of the statements that O'Brien recorded on November 30 and December 1, 2003, although he acknowledged that he signed the statements. Stapleton pled guilty to Mikutis's murder in May 2009.

¶ 21    Police recovered coins and a sword from defendant's apartment, which Mikutis's son identified as belonging to his father. The parties stipulated that no fingerprints suitable for comparison were found at the scene and that no blood was detected on the sword or its sheath.

¶ 22 In defendant's case, his Department of Children and Family Services caseworker Veronica Thomas testified that, in August 2003, defendant showed her coins that a family member had given him and that he kept at his apartment. When she learned that defendant had been arrested on October 22, 2003, she went to his apartment and found it in disarray, with a broken window and the back door unlocked. She did not see a sword or drugs in defendant's apartment. Kimyona Taylor, an investigator for the Cook County Public Defender's Office, testified that Hayden stated that she owed money to various people in Berwyn for drugs.

¶ 23 In closing, the State argued that both defendant and Stapleton were responsible for Mikutis's murder, that defendant's December 1, 2003, statement established his guilt, and that Stapleton recanted at trial because he was afraid of defendant. Defendant argued that Stapleton was solely responsible for the murder and that he implicated defendant only to get favorable treatment from the State. Defendant also highlighted that no physical evidence connected him to the murder and that Hayden owed multiple people money for drugs.

¶ 24 The trial court instructed the jury on felony murder and accountability, and the jury found defendant guilty of first degree murder. The court denied defendant's motions for a new trial and sentenced him to 33 years' imprisonment. Defendant's motion to reconsider his sentence was denied as well. On direct appeal, defendant argued only that the trial court erred in limiting his cross examination of Stapleton. *James*, 2013 IL App (1st) 112110, ¶ 43. We affirmed. *Id.* ¶ 67.

¶ 25 C. Postconviction Proceedings

¶ 26 In 2014, defendant filed a *pro se* postconviction petition that raised four claims: (1) violation of his right to represent himself and his right to a speedy trial, (2) ineffective assistance of trial counsel at the hearings on his motions to suppress his statements, (3) ineffective

assistance of trial counsel for failing to object to the admission of defendant's statements at trial, and (4) ineffective assistance of appellate counsel for not raising these issues on direct appeal. Relevant here, defendant alleged that, at the suppression hearings, trial counsel failed to present defendant's "testimony regarding the physical abuse [he] suffered at the hands of detective[s] Ortiz and Tate" and failed to introduce "photos that were available which depicted signs of the abuse." As a result, the police and ASA witnesses' testimony that defendant was only subjected to force in response to his suicide attempt was unrebutted, which caused the trial court to deny his motions. Defendant's *pro se* petition contained no citation of legal authority aside from the statutory citation of the Post-Conviction Hearing Act (Act) itself (725 ILCS 5/122-1 *et seq.* (West 2014)).

¶ 27    Defendant attached his own affidavit to his petition. He attested that he would have testified that he requested an attorney at the Berwyn police station on October 22, 2003, but Krueger became angry and stormed out of the interview room. Ortiz then handcuffed defendant, choked him, and smothered his mouth and nose while Tate held him in a chair. Ortiz told defendant that he was going to "see how it feels to be suffocated like the victim was." Tate then threw defendant to the ground, and he and Mazza struck defendant's body and head, telling him that they would continue until defendant confessed. Thereafter, Mazza tased defendant's genitals while dragging him to the lockup and tased defendant again in a cell.

¶ 28    The circuit court advanced defendant's petition to the second stage and appointed postconviction counsel. In 2016, postconviction counsel filed a certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The Rule 651(c) certificate stated that counsel consulted with defendant by mail and in person, reviewed the reports of proceedings, and "determined that the petition as it is written adequately represents petitioner's constitutional claims

and deprivations." Counsel indicated that she did not intend to amend or supplement the petition. In 2019, the circuit court received a letter from defendant stating that postconviction counsel refused to speak with him. Defendant sought to supplement his petition with additional transcripts regarding his claim that the trial court violated his right to represent himself.

¶ 29     The State filed a motion to dismiss defendant's *pro se* petition. Relevant here, the State argued that defendant did not make a substantial showing of ineffective assistance of trial counsel during the suppression hearings because "he cannot show that there were photographs that could have caused [the trial court] to grant the motion [to suppress] that was based on physical and mental coercion." Postconviction counsel stated that she conferred with defendant multiple times, reviewed the trial file, interviewed Stapleton, and attempted to interview an alibi witness. Counsel explained that she was "standing on just the petition as it's written." The circuit court granted the State's motion to dismiss on September 27, 2019. The court did not elaborate on its reasoning with respect to defendant's claim of ineffective assistance of trial counsel.

¶ 30     Defendant timely appealed.

¶ 31                                   II. ANALYSIS

¶ 32     On appeal, defendant contends that we should reverse the second-stage dismissal of his postconviction petition because postconviction counsel rendered unreasonable assistance when she "failed to make obvious and necessary amendments to the *pro se* petition, such as the inclusion of citations to basic legal authority." He also argues that his petition, when "properly supported" with legal authority, makes a substantial showing that trial counsel rendered ineffective assistance by failing to present evidence in support of defendant's motions to suppress his statements.

¶ 33    The Act provides a three-stage process for a criminal defendant to allege that his conviction was the result of a substantial denial of his constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2014); *People v. Myles*, 2020 IL App (1st) 171964, ¶ 17. In this case, the circuit court dismissed defendant's petition at the second stage. At the second stage, the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation. *Myles*, 2020 IL App (1st) 171964, ¶ 17. If the defendant makes such a showing, then he is entitled to a third-stage evidentiary hearing. *Id.* The circuit court may only dismiss a petition at the second stage if the allegations, liberally construed in favor of the defendant and taken as true, do not make a substantial showing of a constitutional violation. *People v. Sanders*, 2016 IL 118123, ¶ 31. We review the dismissal of a postconviction petition *de novo* (*id.*), meaning that we perform the same analysis that the circuit court would perform (*In re N.H.*, 2016 IL App (1st) 152504, ¶ 50).

¶ 34    First, we must determine the proper order in which to address defendant's claims. Defendant's claim that trial counsel rendered ineffective assistance in litigating the motions to suppress his statements is constitutional in nature. See *People v. Veach*, 2017 IL 120649, ¶ 47 ("[A] defendant must generally raise a constitutional claim alleging ineffective assistance of counsel on direct review or risk forfeiting the claim."). His claim of unreasonable assistance of postconviction counsel is not (*People v. Kelly*, 2012 IL App (1st) 101521, ¶ 27), because there is no constitutional right to counsel in proceedings under the Act (*People v. Johnson*, 2018 IL 122227, ¶ 16). "If a court can resolve a case on nonconstitutional grounds, it should do so," and "[c]onstitutional issues should be reached only as a last resort." *People v. Brown*, 225 Ill. 2d 188,

200 (2007). So, we will first address defendant's nonconstitutional claim of unreasonable assistance of postconviction counsel.

¶ 35                    A. Unreasonable Assistance of Postconviction Counsel

¶ 36    Defendant contends that postconviction counsel rendered unreasonable assistance because she failed to make necessary amendments to his *pro se* petition. "During second-stage proceedings, the court may appoint counsel for an indigent defendant, who may amend the petition as necessary, and the State may file a motion to dismiss *** the petition." *People v. Cotto*, 2016 IL 119006, ¶ 27. A defendant is entitled to reasonable assistance from appointed postconviction counsel. *People v. Greer*, 212 Ill. 2d 192, 204 (2004). To ensure this level of assistance, Rule 651(c) imposes three duties on appointed postconviction counsel. *People v. Perkins*, 229 Ill. 2d 34, 42 (2007). Postconviction counsel must certify, or the record must show, that counsel (1) "has consulted with petitioner by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights"; (2) "has examined the record of the proceedings at the trial"; and (3) "has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Where, as in this case, postconviction counsel files a certificate attesting that she fulfilled the duties of Rule 651(c), we presume that the defendant received reasonable assistance. See *People v. Custer*, 2019 IL 123339, ¶ 32. That presumption controls unless the defendant rebuts it. *Id.* We review postconviction counsel's compliance with Rule 651(c) *de novo*. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 17.

¶ 37    Defendant alleges that postconviction counsel provided unreasonable assistance because she (1) did not present documentary evidence in support of his claims or explain why such

evidence was unavailable, (2) did not amend his *pro se* petition to include citation of legal authority, and (3) did not respond to the State's motion to dismiss. We address each of these allegations in turn, mindful that defendant has the burden of rebutting the presumption that counsel provided reasonable assistance. See *id.* ¶ 19.

¶ 38    First, defendant argues that postconviction counsel failed to present photographs documenting injuries he sustained at the Berwyn police station in October 2003. Defendant's *pro se* petition claims there are such photographs, but he does not identify who took the photographs, when or where they were taken, or where the photographs might be now. These photographs are not in the record. "Rule 651(c) does not impose upon postconviction counsel a legal duty 'to actively search for sources outside the record that might support general claims raised in a post-conviction petition.' " *People v. Mendoza*, 402 Ill. App. 3d 808, 817 (2010) (quoting *People v. Johnson*, 154 Ill. 2d 227, 247 (1993)). If the defendant claims that evidence missing from his petition exists outside the record, postconviction counsel has no duty to find that evidence. *Id.* So, postconviction counsel had no obligation to amend the petition with photographs that, if they exist, are outside the record.

¶ 39    Defendant also argues that postconviction counsel should have submitted an affidavit from him to support his claim that his right to self-representation was violated. According to defendant, such an affidavit was necessary to rebut trial counsel's statement that defendant withdrew his request to proceed *pro se*, and it may have established that defendant "acquiesced to [trial counsel]'s continued representation due to improper coercion, inducement, or misrepresentation." Defendant's own *pro se* affidavit makes no such claims. Furthermore, the record establishes that postconviction counsel communicated with both defendant and trial counsel. We can only

conclude that whatever postconviction counsel learned from defendant and trial counsel did not warrant the filing of the affidavit that defendant now argues was necessary to support his claim that his right to self-representation was violated. Accordingly, we reject defendant's contentions that postconviction counsel rendered unreasonable assistance due to her failure to submit documentary evidence in support of his claims.

¶ 40 Second, defendant argues that postconviction counsel failed to amend his petition with citations of authority, such as *Strickland v. Washington*, 466 U.S. 668 (1984). The record confirms that defendant's *pro se* petition included no citation of legal authority beyond the statutory citation of the Act itself and that postconviction counsel did not cite any caselaw to the circuit court. However, we have found no authority holding that Rule 651(c) requires postconviction counsel to cite and argue caselaw. And, as a practical matter, there is no indication that the circuit court was unaware of authority like *Strickland* when it evaluated defendant's ineffective assistance of counsel claims. We agree that postconviction counsel's omission of caselaw was not ideal, and we question whether a petition that cites no legal authority is truly in the "proper legal form" for second-stage proceedings. See *Perkins*, 229 Ill. 2d at 44 ("[T]he purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court."). However, "[t]he reasonable assistance standard *** is supposed to be even lower than the *Strickland* standard." *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 54. In the absence of authority holding that postconviction counsel's failure to cite caselaw constitutes unreasonable assistance under Rule 651(c), we decline to reverse on this basis.

¶ 41 We acknowledge that *Kelly*, 2012 IL App (1st) 101521, which defendant cites, has some similarities to this case. For example, postconviction counsel in *Kelly* failed to cite controlling

United States Supreme Court precedent to the postconviction judge. *Id.* ¶¶ 26, 31. However, *Kelly* involved other factors that are not present in this case. For instance, postconviction counsel in *Kelly* did not understand what stage the proceedings were at, and there was a 12-year delay between the defendant's initial filing of his petition and its second-stage dismissal. *Id.* ¶ 40. No such delay or "lack[ ] of basic knowledge of the Act" exists in this case, so *Kelly* is not similar enough to compel reversal.

¶ 42    Finally, defendant argues that postconviction counsel "declined to file any response" to the State's motion to dismiss and "offered no argument on [defendant's] behalf" at the hearing on that motion. Defendant infers that counsel concluded that his claims were meritless. According to defendant, counsel was then obligated to "file a motion to withdraw as counsel, rather than placing meritless claims before the court." However, our caselaw holds that, when postconviction counsel investigates a defendant's *pro se* claims and determines that they have no merit, counsel has two options. One is to withdraw as counsel. *Greer*, 212 Ill. 2d at 209-11. The other is to " 'stand on the allegations in the *pro se* petition and inform the court of the reason the petition was not amended.' " *People v. Perry*, 2017 IL App (1st) 150587, ¶ 26 (quoting *People v. Pace*, 386 Ill. App. 3d 1056, 1062 (2008)). In either case, the *pro se* allegations "remain[ ] to proceed according to the parameters of the Act." *Pace*, 386 Ill. App. 3d at 1062. That is exactly what occurred in this case. Counsel stood on defendant's *pro se* allegations, explained that she did not amend his petition because she could find no evidentiary support to do so, and asked the circuit court to advance defendant's petition to a third-stage hearing. That is a proper approach under current Illinois caselaw. See *id.*; see also *People v. Malone*, 2017 IL App (3d) 140165, ¶ 10. Accordingly, we

affirm the circuit court's dismissal of defendant's petition over his contention that postconviction counsel rendered unreasonable assistance under Rule 651(c).

¶ 43            B. Ineffective Assistance of Trial Counsel at Suppression Hearings

¶ 44    Defendant also argues that his *pro se* petition, when properly supported with legal authority, establishes that trial counsel rendered ineffective assistance in attempting to suppress defendant's statements. The circuit court dismissed this claim of ineffective assistance at the second stage, at which the court had to determine whether the petition and any accompanying documentation made a substantial showing of a constitutional violation. See *People v. Domagala*, 2013 IL 113688, ¶ 33. As noted above, we review the dismissal of this claim *de novo*. *People v. Marshall*, 381 Ill. App. 3d 724, 730 (2008). At the second stage, " 'all well-pleaded facts that are not positively rebutted by the original trial record are to be taken as true.' " *Domagala*, 2013 IL 113688, ¶ 35 (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)).

¶ 45    Defendant raised no claims of ineffective assistance of trial counsel on direct appeal. "[A] defendant must generally raise a constitutional claim alleging ineffective assistance of counsel on direct review or risk forfeiting the claim." See *Veach*, 2017 IL 120649, ¶ 47. Similarly, when a postconviction claim of ineffective assistance of trial counsel is "based on the record" and "not raised on direct appeal" and the petition "does not allege ineffective assistance of appellate counsel," the defendant forfeits review of the issue. *People v. Youngblood*, 389 Ill. App. 3d 209, 215 (2009). That is not the case here. Defendant's claim of ineffective assistance of trial counsel is based on his affidavit setting out the testimony that he would have given at the suppression hearings and alleged photographs of his injuries. Neither of those pieces of evidence was in the record at the time of defendant's direct appeal. Moreover, defendant's *pro se* postconviction

petition alleged ineffective assistance of appellate counsel for failing to raise the issues that defendant raised in his petition. So, we find that defendant has not forfeited this claim. We also note that the State does not raise forfeiture. "The rules of waiver also apply to the State, and where, as here, the State fails to argue that defendant has forfeited the issue, it has waived the forfeiture." *People v. Bridgeforth*, 2017 IL App (1st) 143637, ¶ 46. We will address defendant's ineffective assistance of trial counsel claim on its merits.

¶ 46    A criminal defendant has the constitutional right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *Strickland*, 466 U.S. at 684-86. A defendant may raise a claim of ineffective assistance of counsel under the Act. *People v. King*, 316 Ill. App. 3d 901, 912 (2000). We evaluate a claim of ineffective assistance of counsel under the two-pronged test of *Strickland*. *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984). First, a defendant alleging ineffective assistance must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, the defendant must show that he suffered prejudice due to counsel's deficient performance. *Id.* In the context of a motion to suppress, this means "a reasonable probability that: (1) the motion would have been granted, and (2) the outcome of the trial would have been different had the evidence been suppressed." (Internal quotation marks omitted.) *People v. Givens*, 237 Ill. 2d 311, 331 (2010). We can only find ineffective assistance if a defendant establishes both prongs of the *Strickland* test. *Strickland*, 466 U.S. at 687. There is a strong presumption that counsel's representation fell within a wide range of reasonable

professional assistance and that the challenged conduct was sound strategy. *People v. Bates*, 324 Ill. App. 3d 812, 815 (2001).

¶ 47     The theory of defendant's motions to suppress was that Berwyn police threatened, beat, tased, and detained him without clothes or medical treatment on October 22 and 23, 2003, to "break him down" for a future interrogation. He claimed that they covered up their abuse of him by falsely claiming that he attempted suicide in the lockup. Defendant confessed to Mikutis's murder on December 1, 2003, because, according to defendant, he feared being abused as he had been in October. According to defendant, trial counsel should have called him to testify about the physical abuse that he suffered in October and should have introduced photographs showing his injuries. Because counsel did not take those steps, the police version of events was uncontested, and the trial court denied his motions to suppress.

¶ 48     Counsel's decision whether to call the defendant to testify at a hearing to suppress his statements is a matter of strategy. *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 233. Strategic decisions are " 'virtually unchallengeable' " and generally will not support an ineffective assistance of counsel claim. *People v. Walton*, 378 Ill. App. 3d 580, 589 (2007) (quoting *People v. Palmer*, 162 Ill. 2d 465, 476 (1994)). That general rule applies in this case. There are a variety of reasonable justifications for counsel's decision not to call defendant at the suppression hearings. For example, counsel may have wanted to avoid inconsistencies in defendant's testimony that the State could have used to impeach him if he testified at trial. See *People v. Rosenberg*, 213 Ill. 2d 69, 80-81 (2004) (a defendant's testimony at a suppression hearing can be used for impeachment if the defendant testifies at trial). We certainly cannot say that counsel's decision not to have

defendant testify at the suppression hearings was an error so serious that counsel was not functioning as the counsel that the sixth amendment guarantees. See *Strickland*, 466 U.S. at 687.

¶ 49 Defendant argues that trial counsel presented "no affirmative evidence to support" his claim that Berwyn police physically abused him to coerce an inculpatory statement. Rather, counsel tried to establish that theory solely by cross-examining police witnesses. As defendant acknowledges, counsel elicited police testimony admitting to "egregious" mistreatment of defendant and that was "riddled with [credibility] problems." Under questioning from trial counsel, Berwyn officers admitted that they used force during a four-on-one "fight" with defendant, that they tased him twice, that he was held completely naked in a cell for several hours, and that he was never provided medical treatment in the aftermath of a suicide attempt. The fact that counsel managed to elicit such testimony points to his effectiveness. It was reasonable for counsel to think that the police witnesses' testimony was sufficient to support his theory without taking the risk of calling defendant.

¶ 50 Moreover, we are not convinced that defendant can establish prejudice under *Strickland*. Even if trial counsel had called defendant to testify at the suppression hearings and the trial court found his testimony credible, the court likely would not have suppressed his statements. Defendant's testimony would not have changed the time that elapsed between the alleged physical abuse in October and his inculpatory statement in December. That time gap was central to the trial court's reasoning that there was "no connection, no nexus between what occurred on the 22nd and 23rd of October and the statement that was given on December 1st." We are not persuaded that defendant's testimony would have produced a different result in the trial court.

¶ 51    The cases that defendant cites do not warrant reversal. See, *e.g.*, *Bates*, 324 Ill. App. 3d at 815-16 (the defendant made a substantial showing that trial counsel was ineffective for failing to call a witness to testify in support of a theory of self-defense); *People v. Cleveland*, 2012 IL App (1st) 101631, ¶¶ 66-67 (the defendant failed to make a substantial showing that counsel prevented him from testifying at trial). Accordingly, we find that defendant has not made a substantial showing of ineffective assistance of trial counsel in litigating his motions to suppress, and we affirm the second-stage dismissal of that claim.

¶ 52                                III. CONCLUSION

¶ 53    For the foregoing reasons, we affirm the second-stage dismissal of defendant's postconviction petition.

¶ 54    Affirmed.

¶ 55    JUSTICE D.B. WALKER, concurring in part and dissenting in part:

¶ 56    The majority's analysis with regard to petitioner's claim of ineffective assistance of trial counsel is sound, and I concur with regard to that issue. I must dissent, however, with regard to the majority's analysis on the issue of unreasonable assistance of postconviction counsel and the majority's decision to affirm the second-stage dismissal. On the issue of unreasonable assistance of postconviction counsel, I agree with the majority's reasoning regarding postconviction counsel's alleged failure to present photographic evidence. However, I write separately to address the points where I disagree with the rest of the majority's reasoning and its ultimate holding regarding postconviction counsel's alleged unreasonable assistance. First, I disagree with the majority's interpretation of the caselaw regarding "standing on the petition." Second, even if I were to agree with the majority's interpretation of the caselaw, I disagree with the majority's

assertion that, here, counsel complied with her obligation to inform the court of her reasons for standing on the petition.

¶ 57 A review of the caselaw shows that there were three bases articulated for permissibly standing on the petition in the caselaw that spans from 1968 to 1989, prior to the modern revival of the idea: (1) defendant requested that counsel stand on the petition (see *People v. Sullivan*, 6 Ill. App. 3d 814, 818 (1972); *People v. Walker*, 6 Ill. App. 3d 909, 912 (1972); *People v. Caldwell*, 55 Ill. 2d 152, 153 (1973)); (2) there was no legal issue presented in the petition that was cognizable under the Act (see *People v. Tyner*, 40 Ill. 2d 1, 3 (1968); *People v. Ballinger*, 53 Ill. 2d 388, 389 (1973); *People v. Wolfe*, 27 Ill. App. 3d 551, 553 (1975) (most issues were not constitutional issues cognizable under the Act; the remaining issue was clearly rebutted by the record); *People v. White*, 198 Ill. App. 3d 781 (1989)); and (3) there was no factual basis sufficient to establish an issue for review (see *People v. Bowman*, 55 Ill. 2d 138, 140 (1973); *People v. Anthony*, 5 Ill. App. 3d 722, 725 (1972)). It is arguable that, in the terminology used by *Pace* and its progeny, a claim that fails to present a cognizable legal issue would be termed "frivolous" and a claim that lacks a factual basis sufficient to establish an issue for review would be termed "without merit." Since *Pace* could not overrule our supreme court, we must assume that the meaning that *Pace* was trying to convey with its succinct, if vague, language was the same as the precedent on which it relied. However, even if *Pace* correctly stated the criteria for standing on the petition as it stood in 1975 at the time of *Wolfe*, this case does not fit those criteria. Even if it did, that caselaw is in conflict with the ethical obligation clearly stated in the much more recent opinion in *Greer*.

¶ 58 In the case at bar, one of the claims raised by the defendant was ineffective assistance of trial counsel for failing to call defendant to testify at trial. An affidavit was attached to the

postconviction petition providing the testimony that defendant argues he would have provided had he been put on the stand to testify. Ineffective assistance of counsel is a constitutional question cognizable under the Act, and the record itself, along with the affidavit, provides sufficient factual support to create an issue for the court to examine. Defendant raised this issue in this appeal and pointed out amendments that could have been made to support this argument. Accordingly, I cannot see how, even viewing the choice to stand on the petition in the full span of the caselaw on the subject, the majority can see standing on the petition as appropriate in this case. There was a cognizable issue with a factual basis. Therefore, there was no justification for failing to amend the petition. It should be noted that any speculation about the likelihood of success on the merits has no place in this analysis, which is likely why many cases prefer the language "*patently* without merit"—to reinforce that it must be absolutely without question that there is no merit, not merely a so-called "losing case." To hold otherwise is to allow appointed postconviction counsel to usurp the role of the judge and enjoy the presumption, under Rule 651, that they have acted properly in doing so.

¶ 59    The majority writes that there is no caselaw that requires postconviction counsel to cite and argue caselaw and that, practically speaking, there is no indication that the circuit court was unaware of relevant authority, including the particular case mentioned on appeal, *Strickland*. The majority even questions whether a petition without citation of legal authority is the "proper legal form" required by Rule 651(c) yet concludes that postconviction counsel's assistance was not unreasonable because (1) the bar for unreasonable assistance of counsel is lower than the bar set by *Strickland* and (2) there is no authority holding that failure to cite caselaw constitutes unreasonable assistance of counsel.

¶ 60    The purpose of appointing postconviction counsel for *pro se* postconviction petitioners is to ensure that the petitioner's alleged constitutional violation is reviewed after it has had the benefit of an attorney's legal expertise, including "mak[ing] any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of petitioner's contentions." Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Were a petitioner who was represented by counsel from the start to present the circuit court with a petition without any citation of authority whatsoever, it is beyond doubt that the circuit court would find it to be a less than adequate presentation of petitioner's contentions. That this is a lower bar than *Strickland* is irrelevant, and the fact that there is no holding that states a requirement specifically makes it no less clear that a complete failure to cite authority represents unreasonable assistance of postconviction counsel. The question of whether one might expect a court, or any trained legal professional, for that matter, to be unaware of as prominent a case as *Strickland* is similarly irrelevant. We do not ask attorneys to cite the law only when they suspect we might be unaware of it; we ask them to support each and every one of their arguments with legal authority. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Unlike *Strickland*, there is no question of prejudice involved in an unreasonable assistance of counsel analysis, so whether the circuit court judge needed to be reminded of *Strickland* or not has no impact on whether petitioner's claims were adequately presented. If petitioner's claims were neither frivolous nor without merit, as determined by the trial judge when the petition was passed to the second stage, counsel was ethically obligated to zealously advocate for the petitioner, which undoubtedly includes employing basic legal skills like citation of authority.

¶ 61    As a final matter with respect to the validity of the option to stand on the petition, our supreme court's much more recent precedents in *Greer* and *Kuehner* may well have overruled the

earlier precedent that *Pace* and its progeny (including the majority opinion herein) rely on for the validity of standing on the petition. *Greer*, 212 Ill. 2d 192; *People v. Kuehner*, 2015 IL 117695. *Greer*'s response to the State's arguments in that case applies well to *Pace* and its progeny: "[i]t seems to us that these arguments purposefully avoid the pertinent ethical considerations." *Greer*, 212 Ill. 2d at 206. Both *Greer* and *Kuehner* are focused on the withdrawal of appointed postconviction counsel, with *Greer* establishing that withdrawal is an option and *Kuehner* establishing an additional, intentionally heavy burden for postconviction counsel seeking to withdraw in those instances where the petition passed the first stage intentionally, rather than because the 90-day first-stage review period lapsed, as in *Greer*. *Id.* at 200, 205; *Kuehner*, 2015 IL 117695, ¶ 21.

¶ 62    The majority here, the State, and some of the modern cases on the subject all assert that *Greer* does not require withdrawal but only permits it. This seems to ignore that *Greer* establishes two important points: first, that representing a client on a postconviction petition is akin to appellate representation, where silence is not a valid strategy and so counsel "cannot serve the client's interest without asserting specific grounds for reversal." (Internal quotation marks omitted.) *Greer*, 212 Ill. 2d at 207. Second, if there are no such grounds for reversal, *Greer*'s following question and answer apply: "What is defense counsel to do after he or she determines that defendant's petition is frivolous? Is counsel to stand mute at all subsequent proceedings? How can counsel, ethically, 'present the petitioner's contentions' when counsel *knows* those contentions are frivolous? Obviously, the answer is counsel cannot." (Emphasis in original.) *Id.* at 206. So, while it is true that *Greer*'s holding never explicitly demands withdrawal, the *Greer* court did explicitly reason that, where counsel determines that a petition is frivolous, counsel is ethically

obligated to withdraw. Since standing on the petition and withdrawing are mutually exclusive, the attorney is unquestionably still the client's representative, so when, as in the case at bar, the attorney stand on the petition without making basic amendments to remediate it, postconviction counsel is still presenting the petitioner's contentions, only without the benefit of counsel's legal expertise. How can we call this reasonable representation? If the petition is so flawed that the attorney cannot ethically amend it, the attorney must withdraw; if the attorney is not obligated to withdraw, the petition must have sufficient merit to warrant any necessary amendments. There is no middle ground. The only scenario in which failing to amend a potentially meritorious petition would comply with precedent and with an attorney's ethical obligation is the exceedingly rare scenario in which the *pro se* petitioner has written with such legal expertise that no amendments are necessary to adequately present petitioner's claims. The case at bar does not present such a scenario.

¶ 63    I mention *Kuehner* only to note that that opinion forcefully reiterates that our supreme court is "serious about appointed counsel's burden when seeking to withdraw from representation following a judicial determination that the *pro se* petition is neither frivolous nor patently without merit." *Kuehner*, 2015 IL 117695, ¶ 24. It would be quite strange for our supreme court to present two courses of action leading to similar outcomes and emphatically articulate an intentionally heavy burden for one choice, while requiring little more than a signature, a short narrative of one's efforts sans even a conclusion, and the five words "I stand on the petition" for the other. Accordingly, to the degree that the early caselaw regarding standing on the petition asserts that it is allowable when the petition is frivolous or patently without merit (though it may have used different language to articulate the same idea 50 years ago), that option was abrogated by *Greer*,

and to the degree post-*Greer* appellate opinions have asserted the continued existence of such an option, they have done so in contravention of *Greer* and, by extension, *Kuehner*.

¶ 64    With all of that said, even if the option to stand on the petition was available to counsel here, I disagree that she met even the requirements set forth in the majority opinion, because she did not inform the court of her reasons for choosing not to amend the petition.

¶ 65    The transcript of the hearing on the State's motion to dismiss indicates that postconviction counsel explained that she (1) communicated extensively with defendant, (2) spoke with defendant's trial attorneys and reviewed their trial files, (3) reviewed medical records for defendant, (4) spoke with affiant Mr. Stapleton for clarification about his affidavit, and (5) spoke with potential alibi witness "Ms. Stuttleworth." After listing these efforts, postconviction counsel stated:

> "Your Honor, based on the review that I have, I have decided not to add to his petition. And I'm asking that you give as Mr. James has written the petition [*sic*], I'm standing on that. He is asking that because of ineffective assistan[ce] of trial counsel, and that his speedy trial rights were violated, that there was a violation of self-representation, that there was ineffective assistan[ce] of appellate counsel failing to raise issues contained in this PC; that is [*sic*] 14th and 6th amendment rights too were violated because the State published his statement to the Jury; based on those things, we are asking for a hearing."

¶ 66    Postconviction counsel simply did not inform the court of why she was standing on the petition. While it is plausible that one might be able to look at counsel's list of efforts and her decision to stand on the petition and fill in the blanks to infer her reasons for making that decision, that is not the requirement set forth in the appellate caselaw laid out by the majority. It is true that

postconviction counsel's submission of the Rule 651(c) certificate creates a rebuttable presumption that the client received reasonable assistance, but such a presumption does not free postconviction counsel of the obligation to explain her decision, nor can the court fulfill that obligation on her behalf. Under the cited body of appellate caselaw, postconviction counsel's only other choice was to withdraw, which she did not do. Accordingly, even interpreting the law as the majority does, postconviction counsel failed to comply with her obligations, and this case should be remanded for second-stage proceedings with new appointed postconviction counsel.

¶ 67    Lastly, we note that defendant has requested in his appellate brief that new postconviction counsel be appointed on remand. Such a request was made and granted in *Kuehner*. *Id.* ¶ 25; see, *e.g.*, *People v. Schlosser*, 2017 IL App (1st) 150355; *People v. Stone*, 2020 IL App (1st) 180029-U. As it would be difficult for defendant to trust appointed counsel that has previously rendered unreasonable assistance, I would grant the request in the case at bar and direct the trial court to appoint new postconviction counsel on remand.

¶ 68    I would reverse the judgment of the circuit court dismissing defendant's *pro se* postconviction petition and remand for second-stage proceedings with different appointed postconviction counsel. As such, I must respectfully dissent.

---

***People v. James*, 2023 IL App (1st) 192232**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 03-CR-28580; the Hon. Pamela M. Leeming, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Kieran M. Wiberg, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Douglas P. Harvath, and Zachary M. Slavens, Assistant State's Attorneys, of counsel), for the People. |

---