NOTICE
Decision filed 02/15/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220326-U

NOS. 5-22-0326, 5-22-0327 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | Nos. 16-CF-2899, 17-CF-3032 |
| | ) | |
| DIONTAE A. VAUGHN, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's second stage-dismissal of defendant's amended postconviction petition is affirmed where defendant failed to allege facts to support allegations that his guilty plea was the result of a bribe or coercion.

¶ 2    This appeal arises from the trial court's second-stage dismissal of an amended petition that the defendant, Diontae A. Vaughn, raised under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). In his amended postconviction petition, the defendant alleged, *inter alia*, that he was suffering from a mental illness at the time of his guilty plea; that plea counsel coerced him into pleading guilty knowing that he had been previously diagnosed with mental health issues; that his plea of guilty was not voluntary; and that plea counsel was ineffective for advising him to take the plea. After a hearing on the State's motion to dismiss, the trial court granted the motion and dismissed the defendant's petition for postconviction relief. The defendant

1

appeals, arguing that the trial court erred in dismissing his postconviction petition at the second stage where he made a substantial showing that his guilty plea was coerced by plea counsel's payments to him in exchange for his plea. Based on the following, we affirm.

¶ 3                                    I. Background

¶ 4                                    A. Plea Hearing

¶ 5    The defendant's guilty plea encompassed charges from two cases arising from different incidents. In case number 16-CF-2899, the defendant was charged with residential burglary (720 ILCS 5/19-3(a) (West 2016)), armed habitual criminal (*id.* § 24-1.7(a)), and armed violence (*id.* § 33A-2(a)). In case number 17-CF-3032, the defendant was charged in an amended indictment with one count of home invasion (*id.* § 19-6(a)(3)), one count of armed habitual criminal (*id.* § 5/24-1.7(a)), and one count of attempted armed robbery (*id.* §§ 18-2(a)(2), 8-4(a)).

¶ 6    Before he entered his guilty plea, the defendant was twice evaluated for fitness. The examining doctor diagnosed the defendant with malingering, antisocial personality order, other specified depressive disorder, and "Rule Out Posttraumatic Stress Disorder." The defendant was found fit to stand trial on July 11, 2018.

¶ 7    On November 21, 2018, the trial court held a hearing where the parties announced they had negotiated a plea agreement: the defendant would plead guilty to residential burglary in the 2016 case and to a new charge, attempted armed robbery, in the 2017 case, in exchange for concurrent 28-year sentences (to be served at 50%) and dismissal of the remaining charges. The plea agreement included a recommendation that the defendant be placed in a facility where he could receive mental health treatment.

¶ 8    The trial court admonished the defendant of the charges and the agreed-upon sentence as set out in the plea agreement. The defendant confirmed that he understood. The trial court then

asked the defendant if that was the sentence he expected to receive, and the defendant replied "yes." The following colloquy ensued:

"THE COURT: Are you under the influence of any drugs or alcohol today?

THE DEFENDANT: No.

THE COURT: Are you suffering from any mental or physical disability that would prevent you from understanding what we are doing here today?

THE DEFENDANT: No, I don't believe so."

¶ 9    The trial court admonished the defendant about his trial rights and the sentencing range, and the State provided a factual basis, after which the following colloquy ensued:

"THE COURT: Mr. Vaughn, has anyone forced you or threatened you to get you to plead guilty today?

THE DEFENDANT: No.

THE COURT: Has anyone promised you anything other than the plea negotiations stated here in court today to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: Are you entering into this plea freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Did you discuss this plea with your attorney, Miss Copeland?

THE DEFENDANT: Yes.

THE COURT: Mr. Vaughn, I find that you understand the nature of the charges against you, your rights and the possible penalties that exist for these offenses. I find that you freely, knowingly, and voluntarily desire to waive your right to a trial and enter pleas of guilty. I'm satisfied that there is a factual basis to support your pleas. I will accept your

3

pleas of guilty, enter findings of guilt and judgment on those findings. Miss Copeland, do you waive a Presentence Investigation and stipulate to the defendant's prior criminal history in the court files?

> THE DEFENDANT: Yes, your honor.

> THE COURT: Miss Uhe, does the State also so waive and stipulate?

> THE STATE: Yes, Your Honor."

The trial court then accepted the defendant's guilty plea and imposed the agreed-upon sentence.

¶ 10    On December 27, 2019, the defendant filed a *pro se* motion to reconsider sentence, which the trial court denied, finding the defendant had entered into a fully-negotiated plea and numerous charges had been dismissed pursuant to his plea with his sentences to run concurrently. The trial court found the motion was not viable since the guilty plea had been negotiated. The defendant also wrote the judge a letter, admitting his guilt for residential burglary but denying his guilt for attempted armed robbery. The court took no action on this letter.

¶ 11                               B. Postconviction Petition

¶ 12    On February 3, 2021, the defendant filed a *pro se* postconviction petition alleging that plea counsel had been ineffective, performed unethical practices, and provided him with erroneous advice. The defendant alleged, in relevant part, that "because [plea counsel] knew that my mental health was in question and declining she bribed and coerced me to take a substantial amount of time and she would send me money to help me out while in prison. She promised me money for a T.V. ($230.00) which she sent to me. (Exhibit #6.)[1] And other monetary gifts. (which was unethical practices)."

---

[1]Although the defendant made references to attached exhibits in his *pro se* petition, they were not included with the copies of the petition in the record. Appointed postconviction counsel later attached exhibits to the defendant's amended petition.

4

¶ 13    On September 24, 2021, the trial court advanced the defendant's petition to the second stage and appointed postconviction counsel. On October 25, 2021, the State filed a motion to dismiss the defendant's petition for postconviction relief.

¶ 14    On February 9, 2022, postconviction counsel filed an amended petition, which incorporated the defendant's *pro se* claims and made additional claims. In his amended petition, the defendant alleged, *inter alia*, that he was suffering from a mental illness at the time of his guilty plea; that plea counsel coerced him into pleading guilty knowing he had been previously diagnosed with paranoid schizophrenia and bipolar disorder; that his plea of guilty was not voluntary; and that plea counsel was ineffective for advising him to take the plea. Postconviction counsel attached Exhibit 6, a JPay[2] receipt from January 2019 in the name of the defendant's plea attorney, Mary Copeland, in the amount of $230. He also attached mental health diagnoses from 2015 and 2016, which included paranoid schizophrenia, major depressive order without psychotic features, and bipolar disorder with psychotic features.

¶ 15    On March 8, 2022, the State filed an amended motion to dismiss the defendant's petition for postconviction relief. The State's amended motion asserted that the defendant's fitness had been evaluated twice and he was found fit for trial both times; that plea counsel's performance did not fall below an objective standard of reasonableness; that the defendant was not prejudiced; that defendant did not allege a substantial denial of his constitutional rights; that the defendant had not raised a constitutional claim nor supported that claim through his filing or affidavit; that defendant did not provide any documentation to support his claims that his attorney bribed or coerced him due to his mental health condition; and that the defendant had entered into the fully negotiated plea

---

[2]JPay is one of the services allowed by the Illinois Department of Corrections for prisoners to receive money.

knowingly and voluntarily, and numerous, more serious, charges were dismissed pursuant to his plea.

¶ 16     On May 24, 2022, the trial court heard arguments from the parties on the State's motion to dismiss. Following arguments, the trial court found, in relevant part, that, contrary to the defendant's claim that he was suffering from mental health issues at the time he entered his guilty plea, he had been found fit to stand trial on two occasions prior to entering into the negotiated plea agreement and that there was no indication that he did not understand the nature of the proceedings against him. In addressing the bribery claim, the trial court stated:

"THE COURT: [The defendant] alleges that Ms. Copeland bribed and coerced him. Those are conclusory statements. He doesn't indicate how she bribed him. What was the quid pro quo? I'll give you money, you do this. I don't know. Coerced me, it's again a conclusory statement—

THE DEFENDANT: She bribed me with money. Gave me money once I got—

THE COURT: Mr. Vaughn, now is not the time. So he tries to support that by the fact that he attaches the receipt where Ms. Copeland put two hundred thirty dollars on his books. I'm not aware of anything that's illegal about an attorney sending a client money or putting money on their books. And that doesn't support the bribed and coerced.

So Ms. Copeland sent him two hundred thirty dollars for whatever reason. Maybe she felt sorry for him. Maybe he asked her. I don't know. But there is—that doesn't tie in. I don't think that that's a significant enough tie in to for me to say that those conclusory statements, bribed and coerced, present a sufficient basis to form a claim of a substantial violation of his Constitutional rights."

The trial court granted the State's motion and dismissed the defendant's amended petition, from which the defendant timely appealed.

¶ 17                                II. Analysis

¶ 18    The sole issue on appeal is whether the trial court erred in dismissing the defendant's amended postconviction petition at the second stage where he claims he made a substantial showing that his guilty plea was coerced by plea counsel's payments to him in exchange for the plea.

¶ 19    The Post-Conviction Hearing Act provides a statutory remedy to criminal defendants who assert claims for substantial violations of their constitutional rights at trial. *People v. Edwards*, 2012 IL 111711, ¶ 21. A postconviction proceeding "is not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994). "The purpose of a post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, nor could have been, adjudicated previously upon direct appeal." *People v. Peeples*, 205 Ill. 2d 480, 510 (2002). The postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated" and shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached. 725 ILCS 5/122-2 (West 2016).

¶ 20    "The Act provides a three-stage mechanism for a defendant to advance such a claim." *People v. Addison*, 2023 IL 127119, ¶ 18. "At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit." *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2016). Thereafter, if the petition is not summarily dismissed, it must be set for further consideration in the second stage. *Addison*, 2023 IL 127119, ¶ 18; 725 ILCS 5/122-2.1(b) (West 2016).

¶ 21     "The second stage of postconviction review tests the legal sufficiency of the petition."

(Internal quotation marks omitted.) *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 12. The

petitioner bears the burden at the second stage of making a substantial showing of a constitutional

violation. *Id.* The circuit court may only dismiss a postconviction petition at this stage if the

allegations, liberally construed in favor of the defendant and taken as true, do not make a

substantial showing of a constitutional violation. *People v. James*, 2023 IL App (1st) 192232, ¶ 33.

"The purpose of the first two stages is to determine whether an evidentiary hearing is even

necessary." *People v. Fields*, 2020 IL App (1st) 151735, ¶ 42. A reviewing court applies a *de novo*

standard to a trial court's dismissal of a postconviction petition at the second stage. *Addison*, 2023

IL 127119, ¶ 17.

¶ 22     The defendant correctly points out that a guilty plea induced by threats, false

representations, or improper promises, such as a bribe, cannot stand. *Brady v. United States*, 397

U.S. 742, 755 (1970); accord *People v. Aceituno*, 2022 IL App (1st) 172116, ¶ 32. While the

defendant provided evidence that plea counsel sent him money, that fact alone does not make a

substantial showing of a constitutional violation. Liberally construing in favor of the defendant

and taken as true, the defendant's allegations are (1) that he pled guilty and (2) that plea counsel

sent him $230. We decline the defendant's invitation to speculate about plea counsel's motivation

to send the defendant money. The defendant's obvious response is that there would be no need for

speculation because plea counsel could answer that question during an evidentiary hearing.

However, the fatal flaw in this contention lies in the defendant's failure to allege a single fact

regarding how 28 years in prison was worth $230. We do not interpret the Act to require the trial

court to advance the defendant's conclusory allegation to a third-stage evidentiary hearing merely

to afford the defendant with another opportunity to attempt to pound a square peg into a round

hole. Although all well-pleaded facts in a postconviction petition and affidavits are to be taken as true, nonfactual and nonspecific assertions which merely amount to conclusions are insufficient to make a substantial showing of a constitutional violation. *People v. Rissley*, 206 Ill. 2d 403, 412 (2003). Thus, we conclude that the defendant failed to carry his burden at the second stage to make a substantial showing of a constitutional violation where he failed to allege facts that supported his allegations that his guilty plea was the result of a bribe or coercion.

¶ 23                                III. Conclusion

¶ 24    For the reasons set forth above, we affirm the trial court's judgment.


¶ 25    Affirmed.