NOTICE
Decision filed 03/03/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 230445-U

NO. 5-23-0445

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Macon County. |
| | ) | |
| v. | ) | No. 12-CF-1651 |
| | ) | |
| TERRIS D. WARNSLEY, | ) | Honorable |
| | ) | Jeffrey S. Geisler, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McHANEY delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's dismissal of defendant's proportionate penalties claim at the second stage of proceeding and the dismissal of defendant's amended postconviction petition following a third-stage evidentiary hearing where defendant failed to make a substantial showing of a constitutional violation.

¶ 2    The defendant, Terris D. Warnsley, appeals from the second-stage dismissal of his proportionate penalties claim and the third-stage dismissal of his amended postconviction petition. The State charged the defendant by information with 18 counts of first degree murder (720 ILCS 5/9-1 (West 2010)), one count of armed robbery (*id.* § 18-2(a)(1)), and one count of home invasion (*id.* § 12-11). The defendant entered an open plea to one count of first degree murder in exchange for the dismissal of the remaining counts and received a 50-year prison sentence. Postconviction counsel filed an amended petition. On appeal, the defendant argues that postconviction counsel

1

rendered unreasonable assistance at the second stage of postconviction proceedings by failing to shape his claims into proper legal form. For the reasons that follow, we affirm.

¶ 3                                   I. Background

¶ 4                              A. Guilty Plea Proceedings

¶ 5      In December 2012, the State charged the defendant and codefendant, Douglas Taylor, jointly with multiple counts of first degree murder of Justin Mentzer. On April 24, 2014, the defendant entered an open plea to count I of the information, which alleged that he and his codefendant intentionally killed Mentzer in a manner accompanied by exceptionally brutal and heinous behavior indicative of wanton cruelty. Based on the charge, the defendant was eligible for a sentence between 20 years and natural life in prison.

¶ 6      Before accepting the plea, the trial court admonished the defendant of the sentencing range and the fact that the ultimate sentence would be up to the trial court. The trial court further admonished the defendant about his rights to a jury or bench trial; to subpoena and confront witnesses; to invoke the privilege against self-incrimination; and to require the State to prove him guilty beyond a reasonable doubt. The defendant indicated his understanding of each of these rights and signed a jury waiver.

¶ 7      The State's proffered factual basis was as follows: In the morning of November 26, 2012, Mentzer's wife came home from work and found Mentzer dead in the living room. He had more than 125 wounds in total, including multiple teeth that were missing, facial fractures, fractured ribs, and stab wounds that perforated his heart and lungs. Witnesses would testify that the defendant and Taylor were with Mentzer the previous night. The defendant was interviewed by the police multiple times, and he ultimately confessed that he and Taylor had beat, kicked, suffocated, and stabbed Mentzer as part of a plan to rob him. After Mentzer died, the defendant

2

and Taylor took Mentzer's PlayStation, laptop, phone, and other items from the home. The pair put the knives and hammer in a pillowcase and left them in a dumpster, placed the phone and laptop in a shed behind the defendant's house, and hid the PlayStation and games in an attic entrance at Taylor's house. Before hiding the phone, the defendant and Taylor used it to text Mentzer's wife, pretending to be him and attempting to cast blame on someone else. Items of physical evidence corroborated the defendant's confession, including a pillowcase with knives and a hammer that was found in a dumpster near the defendant's home, and DNA matching Mentzer being found in bloodstains on the defendant's boots.

¶ 8     The defendant was 21 years old at the time of the offense, and he was 22 years old at the time of his open guilty plea. The trial court asked the defendant if he had ever been diagnosed with a mental disorder, and he said no. The defendant denied taking any substances that would affect his ability to understand the plea proceedings, denied being forced to plead guilty, denied being promised anything in exchange for his guilty plea, and denied having any further questions for his attorney. The trial court accepted the defendant's guilty plea.

¶ 9                              B. Postplea Proceedings

¶ 10    On May 8, 2014, prior to sentencing, the defendant sent a letter to the circuit court and filed a *pro se* motion to withdraw his guilty plea. In the letter and motion, the defendant alleged that plea counsel Karen Root had coerced him into pleading guilty; failed to provide effective assistance of counsel prior to the entry of his plea; and refused to file a motion to withdraw his plea. The defendant further asserted that Root told him three days before the plea that he would get the maximum sentence if he went to trial, but if he took an open plea, she could get him 30 to 35 years. However, after the defendant pled guilty, Root informed him he would receive a 50-year sentence. The defendant asserted that he did not agree to this amount of time and, thus, his plea

3

was involuntary. The defendant sent another letter to the court on July 1, 2014, reiterating his complaints.

¶ 11    At a status hearing on July 2, 2014, Root indicated that she had spoken to the defendant, and he had suggested that he did not understand what he was told when he entered his guilty plea. Plea counsel asked for a continuance to determine whether the defendant wished to proceed to sentencing or withdraw his guilty plea. At a status hearing on August 26, 2014, plea counsel informed the trial court that the defendant intended to withdraw his *pro se* motions, and the case was set for sentencing. Plea counsel was not asked, nor did she explain, why the defendant elected to withdraw his *pro se* motions.

¶ 12                                C. Sentencing

¶ 13    A presentence investigation report was prepared prior to sentencing which indicated that the defendant had no adult criminal history and only one juvenile adjudication for "criminal mischief" in Oregon in 2008. The report indicated the defendant lived with his maternal grandmother for a time, but he was removed from her care due to the physical abuse she inflicted on the defendant. He and his siblings were placed temporarily in the foster care system until their mother regained custody of them. He attended special education classes beginning in elementary school and had significant difficulties reading. The defendant dropped out of high school his senior year and did not obtain a GED. The defendant reported no mental health problems.

¶ 14    At the sentencing hearing, the State presented evidence from a sheriff's deputy as a witness in aggravation who described the investigation of Mentzer's murder and the statements the defendant made in custody. On the morning of Mentzer's murder, the defendant was interviewed by the police, but he did not admit any involvement in the murder. Following the initial interview, the police found a pillowcase in a dumpster containing a hammer, knife, soda can, and tin foil. The

4

defendant was interviewed again and confronted with the additional items of evidence. During the interview, the defendant gave three versions of his involvement in the murder. In the first two versions, he tried to downplay his involvement. However, in the final version, the defendant admitted that he and his codefendant intended to rob and kill Mentzer when they went to his trailer that night, and the defendant admitted that he participated in the murder. At the end of the interview, the deputy realized the camera had not been recording. The following day the deputy reinterviewed the defendant with a working video camera, and once again the defendant admitted his participation in the murder. The State played a 15-minute portion of the final interview for the trial court. On cross-examination, the deputy acknowledged that the defendant told him it had been his codefendant's idea to kill Mentzer, but the defendant did not think he would actually do it. The defendant had reported that he felt he had to be loyal to his codefendant because they were best friends.

¶ 15    The defense presented two witnesses in mitigation: the defendant's sister and the defendant's mother. His sister testified about the abuse she witnessed the defendant receive from his grandmother. The defendant's mother testified that her son had trouble in school as he was growing up. Although he had been in special education classes, she did not believe he received the services he needed. She testified that the defendant still had trouble reading and that she had to explain things to him three or four times. In his statement of allocution, the defendant stated that he was "truly sorry."

¶ 16    In aggravation, the State focused on the brutality of the attack and contested the defendant's contention that he was merely a follower. The State asked the trial court to sentence the defendant to life in prison. The defense asked the trial court for a sentence of 40 years, arguing that the

defendant had a family who loved him, that he had expressed remorse and pled guilty, and that he had a higher potential for rehabilitation.

¶ 17    The trial court noted it had considered the evidence in aggravation and mitigation. In pronouncing sentence, the trial court stated:

> "It's never a pleasant task to sentence a young person. One always hopes that as a young person there may be some increased possibility of rehabilitation. In this case, the defendant's 22 years of age. He is a young person. He did admit his guilt. He's expressed his remorse. Those are factors in mitigation. However, in this case, the factors in aggravation far outweigh the factors in mitigation. The Court would like to adopt all the findings made in imposing sentence regarding the codefendant back on April 29th. This was a case of premeditation. It was planned. It was a brutal murder. The victim, no doubt, suffered numerous wounds, stab wounds and other wounds. I think I mentioned last time, I'll mention again, this wasn't just a murder; this was a torture murder. Under these circumstances, considering all factors in mitigation and aggravation, the Court sees no reason why the sentence for this defendant should be any different from the sentence for his codefendant."

The trial court sentenced the defendant to 50 years in the Illinois Department of Corrections (IDOC).

¶ 18    On the same day as the sentencing hearing, the defendant filed a *pro se* motion to fire appointed counsel, alleging that Root did not allow him to view discovery; attempted to force him into taking an open plea; refused to prepare a defense for him; and refused to prepare motions that he believed would be helpful to his case. On October 21, 2014, the defendant filed a *pro se* motion

to withdraw his guilty plea. In November 2014, the trial court vacated Root's appointment, and in December 2014, appointed attorney Steven G. Jones to represent defendant.

¶ 19                                    D. Rule 604(d) Proceedings - 2015

¶ 20    In August 2015, Jones filed an amended motion to withdraw the defendant's guilty plea. Jones also filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. Dec. 11, 2014). Jones later filed an amended Rule 604(d) certificate.

¶ 21    On October 2, 2015, the trial court held a hearing on the defendant's motion to withdraw his guilty plea. After hearing testimony from the defendant and former defense counsel Root, the trial court denied the motion, finding the record refuted the defendant's claims that his plea was involuntary or that counsel had promised he would receive a particular sentence.

¶ 22                                    E. Direct Appeal

¶ 23    On direct appeal, the defendant argued that his case should be remanded for new postplea proceedings based on counsel's failure to strictly comply with the requirements of Rule 604(d). *People v. Warnsley*, 2017 IL App (4th) 150801-U, ¶ 12. The Fourth District agreed that counsel's Rule 604(d) certificates were deficient, and the court reversed and remanded for (1) the opportunity to file a new motion to withdraw the defendant's guilty plea and/or reconsider the sentence, if counsel concludes a new motion is necessary; (2) a new hearing on the defendant's postplea motion; and (3) the filing of a new certificate in compliance with Rule 604(d). *Id.* ¶ 20.

¶ 24                         F. Rule 604(d) Proceedings on Remand - 2017-2018

¶ 25    On remand, a different attorney represented the defendant and filed a new motion to withdraw his guilty plea. The motion alleged that attorney Root failed to allow the defendant to review the evidence against him; coerced him to plead guilty; failed to explore evidence that

codefendant Taylor had made statements exculpatory to the defendant; and failed to challenge the defendant's confession.

¶ 26    On August 27, 2018, the trial court held a hearing on the defendant's motion to withdraw his guilty plea. The defendant testified that he was coerced by the police into making a confession; that he was coerced by attorney Root into making an open plea; and that he did not know that he could have told the trial court at the sentencing hearing that he wanted to withdraw his guilty plea. On cross-examination, the defendant acknowledged that the victim's DNA had been found on his clothing. He testified that the police told him if he did not confess to the murder, he would be shot and beaten, but he admitted that he had not mentioned this at the previous motion to withdraw his guilty plea. The trial court reviewed the transcripts from the guilty plea hearing, the sentencing hearing, and the original motion to withdraw the guilty plea hearing. The trial court denied the motion, finding that the defendant's plea was made knowingly, intelligently, and voluntarily.

¶ 27                              G. Second Direct Appeal

¶ 28    The defendant appealed the trial court's ruling, but he did not raise any issues pertaining to the voluntariness of his plea or his plea counsel's ineffectiveness. Instead, he moved for a summary remand to correct his presentence credit, which the Fourth District granted.

¶ 29                              H. Postconviction Proceedings

¶ 30    On December 17, 2019, the defendant filed a *pro se* postconviction petition. The defendant asserted, *inter alia*, that his confession was coerced by the police in violation of the fifth amendment and that plea counsel was ineffective for failing to file a motion to suppress his confession. The defendant did not allege that either of his appellate attorneys were ineffective for failing to raise these issues on direct appeal or that postplea counsel was ineffective for failing to file a motion to reconsider his sentence. The defendant also included a claim of actual innocence

8

based on a newly obtained affidavit from his codefendant asserting that the defendant was not present for the murder. The defendant attached his affidavit attesting to the truth of his allegations along with the affidavit from his mother describing his learning disabilities.

¶ 31    On February 24, 2020, the defendant filed a supplement to his *pro se* postconviction petition wherein he added a claim that his 50-year sentence violated his rights under the proportionate penalties clause and the eighth amendment. In the supplement, the defendant asserted that at the time of the offense, he was 21 years old and had learning disabilities; thus, he should not have been sentenced to a *de facto* life sentence without full consideration of his youth and its characteristics as is afforded to juveniles under *Miller v. Alabama*, 567 U.S. 460 (2012). Additionally, he argued that had he known of the *Miller* decision and its implication for young adults, he would not have agreed to an open plea. In support of his supplemental petition, the defendant attached the affidavit from his mother describing his learning disability, an excerpt from the presentence investigation report, excerpts from the record of his plea and sentencing, and a report describing the scientific rationale for extending *Miller* protections to young adults under the age of 25.

¶ 32    On March 16, 2020, the circuit court found that the defendant's petitions raised the gist of a constitutional claim, appointed postconviction counsel to represent the defendant, and advanced the case to the second stage of proceedings. On February 16, 2022, postconviction counsel filed a Rule 651(c) certificate, an amended postconviction petition, and memorandum of law supporting the amended petition. In the amended petition, postconviction counsel acknowledged that the defendant's *pro se* postconviction petition was approximately three months late, but he argued that the lateness was not due to the defendant's culpable negligence. The amended petition incorporated all of the defendant's *pro se* claims and fleshed out the defendant's claims. Counsel

9

attached a new affidavit from the defendant describing his allegations of coercion by the police, his learning disability, and plea counsel's failure to fully explain the charges and evidence against him or file a motion to suppress. Counsel also attached the previously filed exhibits, including the defendant's mother's affidavit and test results from the IDOC. In the memorandum of law, counsel expounded further on the defendant's claims. However, postconviction counsel did not amend the petition to add allegations of ineffective assistance of plea counsel, of postplea counsel, or of appellate counsel.

¶ 33    The State filed a motion to dismiss, asserting that the defendant's petition for postconviction relief was untimely, that many of his claims were barred by *res judicata* or waiver, and, in the alternative, that his claims were meritless. Specifically, the State argued that any as-applied challenge under the proportionate penalties clause should fail because the trial court fully considered the defendant's age and learning disabilities at sentencing.

¶ 34    At the hearing on the State's motion to dismiss, the circuit court declined to dismiss the petition on untimeliness grounds and found that *res judicata* and waiver did not apply. When asked by the circuit court whether there was any case law supporting the argument that a defendant should be treated as a juvenile due to developmental disabilities, postconviction counsel responded that she could not cite a case and that the claim should be further fleshed out at an evidentiary hearing. The circuit court dismissed the defendant's sentencing claim, finding as follows:

"THE COURT: *** I have reviewed all of the case law in this. I am familiar with *People versus Buffer*. That involved a 16 year old defendant charged with murder.

I am also familiar with the prodigy [*sic*] that follows after that case. I tend to agree with the 4th District that has stated in the *People versus Kruger* case, which is a 2021 case,

10

that that involved a 21 year old who was trying to extend *Buffer* to that 18 to 21 year old range. I think that that is better suited for our legislature or the Illinois Supreme Court.

So under the case law in this situation I do not find anything in the case law or this case itself that there is a violation of the Eighth and the proportionality penalty clause in this situation.

The defendant was 22. I will assume from everything that I've read in the record that he did have—he did take special education classes. I am aware of that. He was cognitively delayed, but I do not find that that argument is appropriate."

The circuit court dismissed the eighth amendment and proportionate penalties clause claims but advanced the remaining claims to the third stage.

¶ 35    The circuit court held a third-stage evidentiary hearing over the course of two days. The defendant testified, reiterating his allegations that the police threatened him and coerced him to confess during off-camera interactions and asserting that he told attorney Root that he had been coerced into confessing. He testified that he had a hard time understanding the legal proceedings due to his learning disability and did not understand the possible penalties when he entered his guilty plea. He further testified that Root did not show him all of the discovery. The defendant's mother testified, providing more detail about his learning disabilities. She explained that the defendant received failing grades in school because he had trouble comprehending things and his reading and math levels were around fourth or fifth grade level.

¶ 36    Attorney Karen Root testified on behalf of the State. Root asserted that the general practice at the time of the defendant's case was for discovery to be sent over to the jail after the preliminary hearing. She would not have known directly if the defendant reviewed it, but she would have discussed it with him. Root explained that discovery was ongoing for more than a year and

11

consisted of over 1,000 pages plus DVDs of interviews. She reviewed all of the police reports and interviews, but she could not recall watching codefendant Taylor's police interview. Root did recall reviewing the defendant's interviews and going over them with him. She did not specifically recall the defendant asking her to file a motion to suppress, but that was something she would always consider doing if there was evidence to support such a motion. Root denied the defendant ever telling her that the police had coerced his confession.

¶ 37    Root testified that the defendant did not talk much during their conversations and stated she would spend as much time with him as possible to explain things. She denied the defendant telling her he did not understand anything. Root could not say whether she went over the charges line by line with the defendant, but she did go through the nature of the charges and the possible penalties. She spoke with the defendant about the physical evidence and the autopsy photos. Based on the evidence and the defendant's own statements, Root believed that a guilty plea was the only way the defendant could avoid life in prison.

¶ 38    On cross-examination, Root acknowledged that the defendant's mother told her that he had "trouble understanding," but Root did not recall if she was told about the defendant being in special education classes. The remainder of the State's evidence centered on the defendant's actual innocence claim. His codefendant testified consistent with his affidavit in support of the defendant's postconviction petition.

¶ 39    The defendant's mother testified that, due to her son's learning disabilities, she wanted to be part of discussions about the case and reached out to Root. Root never returned her phone calls and only met with her once while talking to the defendant. According to the defendant's mother, Root told the defendant that if he pled guilty, the State would give him 20 years.

¶ 40    The circuit court denied the defendant's claim of actual innocence on the basis that his codefendant's testimony was not credible. The circuit court found that plea counsel's representation did not fall below an objective standard of reasonableness as Root did not think a motion to suppress would be meritorious. The circuit court acknowledged the defendant's learning disability. However, even with that in mind, after viewing the video recording of the police interview, the circuit court found that the defendant had not been coerced. It also found there had been no overreach by the police and, thus, concluded there was no basis for Root to file a motion to suppress. Although the circuit court noted there was conflicting testimony about what the defendant was told regarding his open plea, it concluded that the plea court's admonishments about the sentencing possibilities were clear. The circuit court found Root's testimony credible with regard to what she communicated to the defendant and her willingness to go to trial. Accordingly, the circuit court denied the defendant's postconviction petition. The defendant timely appealed.

¶ 41                                II. Analysis

¶ 42    On appeal, the defendant argues that even though postconviction counsel filed a Rule 651(c) certificate, she rendered unreasonable assistance at the second stage of postconviction proceedings by failing to shape his claims into proper legal form. See *People v. Perkins*, 229 Ill. 2d 34, 44 (2007) (purpose of Rule 651(c) certificate is to ensure that counsel shapes defendant's claims into proper legal form and presents those claims to the court). The defendant makes three claims of error: (1) although postconviction counsel alleged that the defendant's 50-year *de facto* life sentence violated the proportionate penalties clause as applied to him, counsel did not allege that postplea counsel was ineffective for failure to file a motion to reconsider his sentence on this basis; (2) although postconviction counsel alleged that postplea counsel did not provide reasonable assistance, counsel did not allege that postplea counsel's ineffectiveness led to an unknowing or

13

involuntary guilty plea; and (3) appellate counsel did not provide reasonable assistance when he failed to challenge the guilty plea on direct appeal. The defendant also argues that postconviction counsel rendered unreasonable assistance at the third stage of proceedings when she failed to properly argue his claim of ineffective assistance of plea counsel.

¶ 43                          A. The Post-Conviction Hearing Act

¶ 44    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a statutory remedy to criminal defendants who claim that substantial violations of their constitutional rights occurred at trial. *People v. Taliani*, 2021 IL 125891, ¶ 53; *People v. Edwards*, 2012 IL 111711, ¶ 21. A postconviction proceeding "is not a substitute for, or an addendum to, direct appeal." *People v. Kokoraleis*, 159 Ill. 2d 325, 328 (1994). "The purpose of a post-conviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, nor could have been, adjudicated previously upon direct appeal." *People v. Peeples*, 205 Ill. 2d 480, 510 (2002). The postconviction petition must "clearly set forth the respects in which petitioner's constitutional rights were violated" and shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached. 725 ILCS 5/122-2 (West 2022).

¶ 45    "The Act provides a three-stage mechanism for a defendant to advance such a claim." *People v. Addison*, 2023 IL 127119, ¶ 18. "At the first stage, the trial court must independently review the petition within 90 days of its filing and determine whether it is frivolous or patently without merit." *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2022). Thereafter, if the petition is not summarily dismissed, it must be set for further consideration in the second stage. 725 ILCS 5/122-2.1(b) (West 2022); *Addison*, 2023 IL 127119, ¶ 18.

¶ 46    "The second stage of postconviction review tests the legal sufficiency of the petition." (Internal quotation marks omitted.) *People v. Dixon*, 2018 IL App (3d) 150630, ¶ 12. The petitioner bears the burden at the second stage of making a substantial showing of a constitutional violation. *Id.* "If the State moves to dismiss, the trial court may hold a dismissal hearing, which is still part of the second stage." *People v. Wheeler*, 392 Ill. App. 3d 303, 308 (2009). The circuit court may only dismiss a postconviction petition at this stage if the allegations, liberally construed in favor of the defendant and taken as true, do not make a substantial showing of a constitutional violation. *People v. James*, 2023 IL App (1st) 192232, ¶ 33. "The purpose of the first two stages is to determine whether an evidentiary hearing is even necessary." *People v. Fields*, 2020 IL App (1st) 151735, ¶ 42. A reviewing court applies a *de novo* standard to a trial court's dismissal of a postconviction petition at the second stage. *Addison*, 2023 IL 127119, ¶ 17.

¶ 47    B. Whether Defendant Made a Substantial Showing of a Constitutional Violation

¶ 48    Initially, the defendant contends that postconviction counsel failed to overcome procedural bars to the defendant's as-applied proportionate penalties challenge to his 50-year *de facto* life sentence. As the State correctly notes, the defendant does not contest the circuit court's findings or refusal to extend *Buffer* to this case. Instead, the defendant argues that his claim under the proportionate penalties clause was procedurally barred for the purpose of postconviction review, and, thus, postconviction counsel rendered unreasonable assistance when she failed to amend the defendant's claim to address this procedural bar. The defendant further argues that postconviction counsel failed to explain why the defendant did not raise this claim at an earlier point in the proceedings, such as on direct appeal or on an initial motion to reconsider sentence. Therefore, the defendant asserts that in order to overcome the procedural bar to his claim, postconviction counsel needed to amend his *pro se* petition to allege ineffective assistance of postplea counsel for failing

15

to preserve his sentencing challenge by filing a motion to reconsider sentence. In support of his argument, the defendant cites *Addison*, 2023 IL 127119, ¶ 24 (postconviction counsel provided unreasonable assistance by failing to allege ineffective assistance of appellate counsel to overcome forfeiture). However, as the State correctly notes, the circuit court did not find the defendant's claims barred by waiver or forfeiture. Instead, the defendant's principal constitutional challenge under the proportionate penalties clause was adjudicated by the circuit court, rendering postconviction counsel's failure to amend the defendant's petition to address a procedural bar irrelevant.

¶ 49    We agree that the defendant's claim is without merit where the circuit court did not find a procedural bar to his claim and, instead, addressed the defendant's proportionate penalties claim, and where postconviction counsel argued the merits of the defendant's claim before the circuit court. See *People v. English*, 403 Ill. App. 3d 121, 129 (2010) (purpose of Act is to provide a remedy to a defendant whose constitutional rights were substantially violated in his trial or sentencing hearing). Here, the purpose of the Act was fully served because the defendant was given an opportunity to voice and present his constitutional claim before the circuit court, and postconviction counsel argued the issue on his behalf. Accordingly, the defendant was not denied the reasonable assistance of postconviction counsel.

¶ 50    The defendant next argues that postconviction counsel rendered unreasonable assistance at the second and third stages of the postconviction proceedings by failing to properly frame and argue his claim of unreasonable assistance of plea counsel and of appellate counsel. Specifically, the defendant contends that postconviction counsel should have amended his *pro se* petition to allege that postplea counsel's unreasonable assistance led to an unknowing or involuntary guilty

plea and should have added a claim that appellate counsel failed to provide reasonable assistance by failing to challenge his guilty plea on direct appeal.

¶ 51    "The dismissal of a postconviction petition is warranted at the second stage of the proceedings only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Agee*, 2023 IL 128413, ¶ 69. At the second stage, all factual allegations not positively rebutted by the record are accepted as true. *Id.* Said another way, the allegations in the petition and its supporting affidavits must be taken as true only to the extent they are not rebutted by the trial record. *Id.*

¶ 52    Here, the defendant's contentions are without merit. The record affirmatively rebuts the claim that his guilty plea was unknowing or involuntary where the circuit court, after a hearing, found that his plea was made knowingly, intelligently, and voluntarily. We note that the defendant does not dispute the circuit court's findings but directs his claims of error to postconviction counsel's failure to raise the issue regarding the voluntariness of his guilty plea. We conclude that the defendant failed to make a substantial showing of a constitutional violation and, therefore, his petition for postconviction relief was properly dismissed.

¶ 53                                III. Conclusion

¶ 54    For the reasons set forth above, we affirm the trial court's second-stage dismissal of the defendant's proportionate penalties claim and the third-stage dismissal of the defendant's postconviction petition.

¶ 55    Affirmed.

17