2025 IL App (1st) 232277-U

FOURTH DIVISION
Order filed: June 5, 2025

No. 1-23-2277

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No.  02CR1944 |
| | ) | |
| LATONYA STARNES, | ) | Honorable |
| | ) | Charles P. Burns, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's order granting the State's motion to dismiss the defendant's postconviction petition is affirmed. The defendant's sentencing claim is barred by *res judicata*. The defendant failed to make a substantial showing that trial counsel was ineffective for failing to produce mitigation evidence at sentencing. Postconviction counsel did not provide unreasonable assistance by failing to attach additional evidence to support the defendant's ineffective assistance claim.

¶ 2    Following a jury trial, the defendant, Latonya Starnes, was convicted of first-degree murder and sentenced to 50 years in the Illinois Department of Corrections. This court affirmed her conviction and sentence on direct appeal. *People v. Starnes*, 374 Ill. App. 3d 132 (2007). The

defendant now appeals from the second-stage dismissal of her initial postconviction petition. For the reasons which follow, we affirm.

¶ 3 The evidence at trial was previously set forth in our order on the defendant's direct appeal. *Starnes*, 374 Ill. App. 3d at 133-35. The evidence at trial established that, shortly after 8:30 p.m. on December 29, 2001, paramedics were called to 5800 South Wolcott Avenue in Chicago to treat 11-month-old Bryant Starnes. When they arrived, Bryant was unconscious and not breathing. Efforts to revive Bryant were unsuccessful, and he was pronounced dead later that night. The following day, Dr. Kendall Crowns of the Cook County medical examiner's office performed an autopsy on Bryant and determined that he had died from blunt trauma to the abdomen, causing laceration of the liver and hemoperiteneum, or blood in the abdominal cavity. Dr. Crowns determined the death to be a homicide.

¶ 4 On the morning of January 1, 2002, Chicago police spoke to the defendant at Area One police headquarters regarding Bryant's death. In a videotaped statement, the defendant stated that during the evening of December 29, 2001, she was alone with Bryant in her boyfriend Antwon McBride's bedroom. McBride had left the house earlier to go to a party, and the defendant was depressed and frustrated that she had to watch the baby. She thought about taking her own life, but then thought it would be better to end Bryant's life. She then straddled the baby, put her hands on his right abdomen, and pushed down three times, increasing the pressure each time until, by the third time, she was pushing with all her body weight. The baby began moaning and, after a few minutes, his lips began changing color. Afterwards, the defendant called family members to tell them something was wrong with Bryant, and an ambulance was called.

¶ 5    The jury found the defendant guilty of eight counts of first-degree murder, and made a separate finding that the murder was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty and that the victim was under 12 years of age."

¶ 6    The matter proceeded to sentencing. In mitigation, the defendant's attorney proffered that the defendant dropped out of high school in 11th grade when she got pregnant at the age of 17. Counsel stated that the defendant was 18 years old at the time of Bryant's death and was 21 years old at the time of sentencing. Defense counsel observed that the defendant's mother was present at every court date. Counsel stated that the defendant "had problem following rules in her house" which is "what teenagers do". Counsel asserted that the defendant was "scared" when being questioned by detectives and was concerned about whether her baby would have a funeral. Counsel asked for a minimum sentence for the defendant. In her statement in allocution, the defendant requested "a week's stay" so her family could visit her after sentencing, and asked whether she would get "day for day" sentencing credit.

¶ 7    In announcing its sentencing decision, the trial court stated that it considered the relevant statutory factors, and found that the murder was a premeditated act done for selfish reasons, and that the defendant's testimony and statement in allocution showed a lack of remorse and that she lacked understanding of the severity of what she faced. The court observed that, based on the jury's findings, it could impose an extended term sentence of 60 to 100 years' incarceration, but concluded that such a sentence was not warranted in this case. The court stated that it believed it was necessary to sentence the defendant "close to an extended term sentence", and sentenced the defendant to 50 years in the Illinois Department of Corrections.

¶ 8    On direct appeal, this court affirmed the defendant's conviction and sentence. *Starnes*, 374 Ill. App. 3d at 145. Relevant to this appeal, the defendant argued that "the trial court abused its discretion in sentencing her to 50 years in prison for the first-degree murder of her infant son because the sentence gave inadequate consideration to defendant's youth, lack of criminal history, background, and potential for rehabilitation." *Id.* at 142. This court rejected the defendant's argument, finding that "[t]he trial court was informed of the defendant's youth, her difficult background, her lack of criminal history, and her potential for rehabilitation", and concluding that the trial court did not abuse its discretion in imposing a 50-year sentence. *Id.* at 143-144.

¶ 9    On July 11, 2019, the defendant filed a *pro se* postconviction petition in the circuit court. Among other claims that were later abandoned, the petition alleged that her sentence violated the Illinois Constitution and the Eighth Amendment of the United States Constitution under *Miller v. Alabama*, 567 U.S. 460 (2012). The circuit court docketed the petition and appointed counsel to represent the defendant.

¶ 10    On May 17, 2023, counsel filed a Rule 651(c) certificate and a supplement to the defendant's postconviction petition. The supplement adopted the claims in the *pro se* petition and developed the defendant's claim that she was entitled to resentencing under the Eighth Amendment and the Proportionate Penalties Clause of the Illinois Constitution. The supplement alleged that the defendant experienced an "appalling" childhood consisting of "abuse, cruelty, and violence inflicted by her mother and family", and that this mitigating evidence was not presented to the trial court.

¶ 11    Attached to the supplement were two academic papers regarding the brain development of young adults and the application of *Miller*, the defendant's presentence investigation report, and

certificates earned by the defendant while incarcerated. The supplement also included an evaluation by Dr. Lauren K. Robinson, which documented the defendant's reports of sexual and physical abuse as a child, and diagnosed the defendant with major depressive disorder and generalized anxiety disorder. The supplement also contained affidavits from the defendant and her two sisters, which documented physical and emotional abuse the defendant experienced at the hands of her mother, and sexual abuse perpetrated by the defendant's uncles.

¶ 12     On June 5, 2023, the State filed a motion to dismiss the defendant's postconviction petition. The State argued that the defendant's sentencing claim was barred by *res judicata* as it was raised and rejected on direct appeal, and that the defendant's other claims were meritless.

¶ 13     The defendant filed an amended postconviction petition on the same day as the State's motion to dismiss. The amended petition abandoned the defendant's *pro se* claims except for the sentencing claim, and added new claims that (1) trial counsel was ineffective for failing to present mitigating evidence at the defendant's sentencing hearing, and (2) appellate counsel was ineffective for failing to raise a proportionate penalties clause challenge to her sentence on direct appeal. On August 9, 2023, the defendant filed a response to the State's motion to dismiss, which added an additional claim that appellate counsel was ineffective for failing to allege the ineffective assistance of trial counsel based on the failure to present relevant mitigation evidence at the defendant's sentencing hearing.

¶ 14     On September 7, 2023, the State filed an addendum to their motion to dismiss, which addressed the additional claims raised in the amended petition and in the defendant's response. The State continued to assert that the defendant's sentencing claim was barred by *res judicata*, and

argued that trial counsel was not ineffective when the defendant was given a 50-year sentence when she faced a possible extended term sentence.

¶ 15    After hearing arguments, the circuit court entered a written order denying the defendant's postconviction petition on November 28, 2023. The circuit court concluded that the defendant's proportionate penalties clause claim was meritless, as a 50-year sentence did not shock the conscience of the community based on the facts of the case and the fact that the defendant faced a possible extended term sentence based on the jury's findings. The court found that *Miller* had not been extended to young adult offenders such as the defendant, and therefore any claim based on *Miller* was meritless. The court held that trial counsel was not ineffective at sentencing when the defendant received a sentence below the extended term sentence for which she was eligible based on the jury's findings. The court concluded that appellate counsel was not ineffective, as it raised a challenge to the defendant's sentence on direct appeal based on the defendant's youth and potential for rehabilitation. In its oral ruling issued on the same day, the court stated that the defendant's sentencing claims were barred by *res judicata* as they were raised on direct appeal, but found that "[e]ven if the claims were not barred, they would fail on the merits." This appeal follows.

¶ 16    On appeal, the defendant argues that the circuit court erred by dismissing her postconviction petition, as she made a substantial showing that (1) her 50-year sentence violates the proportionate penalties clause of the Illinois Constitution and (2) trial counsel was ineffective for failing to present mitigation evidence at her sentencing hearing. In the alternative, the defendant argues that postconviction counsel provided unreasonable assistance by failing to include evidence regarding the extent to which trial counsel was aware of the mitigating evidence prior to the

defendant's sentencing hearing or explain why such evidence was not included, and argues that this court should remand for further second-stage proceedings with new counsel.

¶ 17     The Postconviction Hearing Act allows a defendant to collaterally attack a conviction by asserting that it resulted from a "substantial denial" of their constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2024). A post-conviction petition is not an appeal from the conviction judgement, but rather a collateral attack on the trial court proceedings. *People v. Tate*, 2012 IL 112214 ¶ 8. If the petition is not summarily dismissed, it must be docketed for further consideration at the second stage, and the circuit court may appoint counsel to the defendant. 725 ILCS 5/122-2.1(b), 122-4 (West 2024). At the second stage, the defendant must make a substantial showing of a deprivation of a constitutional right. *People v. Bailey*, 2017 IL 121450, ¶ 18. If the defendant fails to make such a showing, the petition is dismissed. *Id.* We review the second-stage dismissal of a postconviction petition *de novo*. *People v. Cotto*, 2016 IL 119006, ¶ 24.

¶ 18     The State argues, as it did below, that the defendant's sentencing claim is barred by *res judicata*, as this court resolved a challenge to the defendant's sentence on direct appeal. A postconviction proceeding is intended to allow inquiry into constitutional issues in the defendant's conviction that could not have been raised on direct appeal. *People v. Towns*, 182 Ill. 2d 491, 502 (1998). "Accordingly, issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*; issues that could have been raised, but were not, are considered forfeited." *People v. Davis*, 2014 IL 115595, ¶ 13. "[A]ll issues actually decided by the reviewing court" are barred by *res judicata* in a postconviction proceeding. *People v. Edwards*, 2012 IL 111711, ¶ 21. A defendant cannot obtain postconviction relief by reframing previously raised issues into constitutional terms. *People v. Flores*, 153 Ill. 2d 264, 277-78 (1992).

¶ 19 In arguing that *res judicata* bars the defendant's claim, the State cites *People v. Gomez*, 2024 IL App (1st) 231355-U. In *Gomez*, the defendant filed a successive postconviction petition challenging his natural life sentence imposed for a first-degree murder committed when he was 18 years old, arguing that it was excessive under the United States and Illinois constitutions. *Id.* ¶¶ 2, 36. On direct appeal, the defendant argued that the trial court abused its discretion in imposing a natural life sentence "in light of his limited, nonviolent criminal history, age, and severity of the crime", and this court affirmed his sentence. *People v. Gomez*, 2011 IL App (1st) 092185, ¶¶ 85, 92. On appeal from the denial of leave to file the successive petition, this court considered whether, based on the principle of fundamental fairness, the defendant could overcome the bar of *res judicata* by satisfying the cause and prejudice test for a successive postconviction petition. *Id.* ¶ 44 (citing *People v. Clark*, 2023 IL 127237, ¶ 45). We found that the defendant's proportionate penalties clause claim based on youth was not novel and did not support a finding of cause to relax the requirements of *res judicata*, and the research on brain development attached to the petition did not constitute new evidence regarding the defendant's brain development. *Id.* ¶¶ 47-58. This court concluded that the defendant "cannot establish the requisite cause necessary to both allow leave to file his successive petition and avoid the bar of the doctrine of *res judicata*", and affirmed. *Id.* ¶¶ 58, 61.

¶ 20 In *People v. Haines*, 2021 IL App (4th) 190612, ¶ 1, cited by *Gomez*, the defendant asserted in a proposed successive petition that his 55-year sentence, imposed for a first-degree murder committed by the defendant when he was 18 years old, violated the Eighth Amendment and the Proportionate Penalties clause. On direct appeal, the defendant had previously argued that the sentencing judge "failed to take into account his youth, his nonviolent history, and his drug

addiction", but the defendant's sentence was affirmed. *Id.* ¶ 17. This court found that the claims in the defendant's successive petition were barred by *res judicata*, as the defendant was raising essentially the same claims as his direct appeal, but "in constitutional clothing." *Id.* ¶¶ 21-22. We found that the defendant's invocation of *Miller*, the proportionate penalties clause, and research on the development of young adult brains was simply an attempt to reframe the issue in constitutional terms, and did not allow the defendant to avoid the effect of *res judicata*. *Id.* ¶ 22.

¶ 21     *Gomez* and *Haines* both involved a sentencing claim raised in a successive postconviction petition, but we find that their analysis of the *res judicata* effect of a claim raised on direct appeal applies to an initial postconviction petition. Here, the defendant raised a sentencing claim on direct appeal arguing that her sentence was excessive based on her youth, background, and lack of criminal history. In her postconviction petition, the defendant again alleges her sentence is excessive, invoking *Miller*, research regarding the development of young adult brains, and additional mitigation evidence regarding her background. We find that the defendant's sentencing claim was resolved on direct appeal and is barred by *res judicata*.

¶ 22     The defendant argues that her current as-applied proportionate penalties clause claim is distinguishable from the claim that she raised on direct appeal, which was that her sentence was an abuse of discretion. However, *Gomez* involved an identical situation, as the defendant argued his natural life sentence was an abuse of discretion on direct appeal, then argued it violated the proportionate penalties clause in a postconviction petition. *Gomez*, 2024 IL App (1st) 231355-U, ¶ 43; *Gomez*, 2011 IL App (1st) 092185, ¶ 85. Regardless of the framing, the defendant argued on direct appeal that her sentence was excessive as it did not reflect consideration of her "youth, lack of criminal history, background, and potential for rehabilitation." *Starnes*, 374 Ill. 3d at 142. Her

claim in her postconviction petition, framed as an as-applied proportionate penalties clause claim and supported by additional mitigation evidence, raises essentially the same claim. See *Clark*, 2023 IL 127273, ¶ 66 ("[A]lthough the appellate court, on direct appeal, did not cite the proportionate penalties clause in its analysis, as stated, defendant invoked the principles imbodied in the proportionate penalties clause[.]").

¶ 23    The defendant asserts that her postconviction petition contains new evidence that was not considered by the trial court and did not appear in her presentence investigation report, which is sufficient to overcome any procedural bars. In doing so, she cites *People v. Blalock*, 2022 IL 126682, ¶¶ 41-46, where our supreme court held that new evidence supporting allegations of police brutality was not previously available to the defendant and can support cause for filing a successive postconviction petition. This court has distinguished *Blalock* from cases where the defendant raises a sentencing challenge in a postconviction petition supported by mitigation evidence that was previously available to them. See *People v. McGee*, 2025 IL App (1st) 231591-U, ¶ 35 (distinguishing *Blalock* and noting that "[a]lthough defendant may now have the science to back it up [], defendant could have summoned the facts about his own childhood experiences and history concerning his upbringing and development."). Here, the evidence regarding the defendant's upbringing was available to the defendant at the time of her sentencing, but she apparently withheld that information from the probation officer responsible for creating her presentence investigation report, which stated that the defendant reported having a "good" childhood. While the defendant posits various reasons why she may not have wanted to disclose her experience with abuse, those reasons are insufficient to overcome the bar of *res judicata*.

¶ 24    Based on the foregoing analysis, we find that the defendant's challenge to her sentence was raised and decided on direct appeal, and therefore is barred by *res judicata*.

¶ 25    The defendant next argues that we should remand for an evidentiary hearing on her claim that her trial counsel was ineffective for failing to investigate and present mitigating evidence at her sentencing hearing. The State argues that the defendant failed to make a substantial showing that trial counsel was ineffective. We agree with the State.

¶ 26    Both the United States and Illinois constitutions guarantee the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Hale*, 2013 IL 113140, ¶ 15. To prevail on a claim alleging the ineffective assistance of counsel, the defendant must show that (1) counsel's representation was deficient such that it fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant such that, but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceedings would have been different. *People v. Domagala*, 2012 IL 113688, ¶ 11. To establish prejudice with regards to counsel's performance at a sentencing hearing, the defendant must show that there is a reasonable probability that the defendant's sentence was impacted by counsel's deficient performance. *People v. Steidl*, 177 Ill. 2d 239, 257 (1997).

¶ 27    At the defendant's sentencing hearing, trial counsel offered information about the defendant's youth, immaturity, and her early pregnancy as mitigation. The defendant asserts that there was a reasonable probability that she would have received a shorter sentence if trial counsel offered additional evidence of the defendant's "horrific" upbringing attached to her petition. However, the record contains no information regarding whether or to what extent trial counsel was aware of the defendant's upbringing at the time of sentencing. The presentence investigation report

contained no information regarding the defendant's history of abuse, and there is no other information in the record to suggest that trial counsel would have been aware of this evidence. We cannot find that trial counsel was ineffective for failing to investigate and present mitigation evidence that she was never made aware of. See *People v. Morgan*, 2015 IL App (1st) 131938, ¶ 77 (finding that trial counsel was not ineffective for failing to investigate potential mitigation witnesses when there was no evidence that the defendant told counsel about the witnesses). Therefore, we find that the defendant failed to make a substantial showing that trial counsel was ineffective for failing to present mitigation evidence at sentencing.

¶ 28 The defendant acknowledges this evidentiary shortcoming and asserts, in the alternative, that postconviction counsel provided unreasonable assistance by not including any information or reasoning as to why the defendant and trial counsel did not discuss the defendant's history of abuse prior to sentencing. The State argues that the defendant received reasonable assistance from postconviction counsel. We agree with the State.

¶ 29 In a postconviction proceeding, there is no constitutional right to counsel, rather the right to counsel is a matter of "legislative grace." *People v. Custer*, 2019 IL 123339, ¶ 30; *People v. Porter*, 122 Ill. 2d 64, 73 (1988). A postconviction defendant is entitled only to the level assistance granted by the Act, which is labelled a 'reasonable' level of assistance. *Flores*, 153 Ill. 2d at 276. Rule 651(c) sets forth the requirements for postconviction counsel, including that counsel "has made any amendments to the petitions filed *pro se* that are necessary for an adequate presentation of the petitioner's contentions." Ill. Sup. Ct. R. 651(c) (eff. Jul. 1, 2017). Once postconviction counsel files a valid Rule 651(c) certificate, a rebuttable presumption of reasonable assistance arises. *Custer*, 2019 IL 123339, ¶ 32.

¶ 30    Here, postconviction counsel filed a valid Rule 651(c) certificate, giving rise to a presumption of reasonable assistance. The defendant asserts that postconviction counsel provided unreasonable assistance by failing to produce evidence regarding whether trial counsel was aware of the defendant's experience with abuse as a child, or by failing to explain the lack of such evidence. However, it is speculative whether such evidence exists, and postconviction counsel's failure to procure evidence outside the record does not constitute unreasonable assistance. See *People v. James*, 2023 IL App (1st) 192232, ¶ 38 ("If the defendant claims that evidence missing from his petition exists outside the record, postconviction counsel has no duty to find that evidence."). The record shows that postconviction counsel made multiple amendments to the defendant's *pro se* claims, secured affidavits from the defendant and her sisters, and secured a report from Dr. Robinson detailing the defendant's history of abuse and mental health problems. The defendant has failed to rebut the presumption that postconviction counsel provided reasonable assistance.

¶ 31    As the defendant's sentencing claim is barred by *res judicata*, she failed to make a substantial showing that trial counsel was ineffective for failing to present mitigating evidence at sentencing, and she received reasonable assistance from postconviction counsel, we affirm the circuit court's second-stage dismissal of the defendant's postconviction petition.

¶ 32    Affirmed.