2025 IL App (1st) 241172-U

No. 1-24-1172

Order filed September 25, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 02 CR 27512 |
| | ) | |
| ANDRES REYES, | ) | Honorable |
| | ) | Marc W. Martin, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the circuit court's grant of the State's motion to dismiss where the defendant's as-applied proportionate penalties clause claim is barred by *res judicata* and he failed to make a substantial showing that his trial counsel was ineffective during his sentencing hearing.

¶ 2    Following a jury trial, defendant Andres Reyes was found guilty of first-degree murder and attempted first-degree murder, and sentenced to 75 years' imprisonment. This court affirmed his sentence on direct appeal. *People v. Reyes*, No. 1-04-3342 (2006) (unpublished order under Illinois Supreme Court Rule 23). Several years later, Reyes filed a postconviction petition claiming that

his sentence was unconstitutional, as applied to him, under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) and his trial counsel provided ineffective assistance during his sentencing hearing. On the State's motion, the circuit court dismissed his petition. Reyes now appeals that dismissal and contends that his petition should have advanced to an evidentiary hearing where he made a substantial showing that his sentence was unconstitutional and his trial counsel was ineffective during sentencing. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                              A. Trial and Direct Appeal

¶ 5     A grand jury indicted Reyes with multiple counts of first-degree murder and attempted first-degree murder in connection with a December 2000 shooting death of Arnulfo Munoz. At the time of the shooting, Reyes was 19 years old. The case proceeded to a jury trial, where the evidence showed there had been an altercation outside Reyes' home between himself, a former member of the Latin Kings gang, and members of the Surenos 13s, a rival gang, which included Munoz and Emigdio Hernandez. Following the altercation, Reyes obtained a firearm and chased after members of the Surenos 13s, eventually locating Munoz and Hernandez. Reyes pointed the firearm at Hernandez and pulled the trigger, but it did not discharge. Reyes then pointed the firearm at Munoz and shot him dead. Reyes, meanwhile, fled to Mexico. Several months later, the police arrested him in Texas, and he confessed to the shooting, though he did express remorse. The jury found Reyes guilty of first-degree murder of Munoz and attempted first-degree murder of Hernandez.

¶ 6     The case continued to sentencing. According to Reyes' presentence investigative report, he reported that his childhood was "good," he never was the victim of abuse or neglect, and he had a good relationship with both of his parents. According to Reyes, he was involved with the Latin

Kings, beginning at 11 years old, but later left the gang. Reyes stated that he attended high school, but was expelled during his freshman year due to gang activity. Although he re-enrolled, he later dropped out. The presentence investigative report revealed that Reyes had a three-year-old daughter and no criminal background. During Reyes' sentencing hearing, the State introduced a victim impact statement from Munoz's fiancée, who discussed the impact that his death had on her and their daughter. However, she remarked that she did not hate Reyes, and she felt sympathy for his family, including his own daughter, who was also losing someone. Reyes' trial counsel did not present any evidence in mitigation, and during argument, counsel highlighted Reyes' presentence investigative report and noted his current age. Yet, counsel focused on Reyes' lack of a criminal history and the sympathy shown by Munoz's fiancée toward Reyes' family.

¶ 7    Following the parties' arguments, the trial court observed Reyes' background, as elicited in the presentence investigative report, and noted his "good home" with no abuse, but his tumultuous high school experience. Although the court acknowledged Reyes' lack of a criminal background, it asserted that he chased Munoz and Hernandez through residential areas of Palatine, Illinois, before ultimately killing Munoz. The court believed that a serious sentence was necessary to deter others from using residential neighborhoods as "hunting grounds" in addition to the offenses being completely "senseless." The court accordingly sentenced Reyes to 65 years' imprisonment for first-degree murder, which included 40 years for the murder and an additional statutory enhancement of 25 years for personally discharging a firearm that caused death, and 10 years' imprisonment for attempted first-degree murder. The court asserted that the sentences had to be served consecutively for a total of 75 years' imprisonment.

¶ 8    Reyes appealed and only challenged his sentence as being excessive, and thus an abuse of discretion, in light of his age at the time of the offenses, his lack of a criminal background, his

rehabilitative potential and his expression of remorse. *People v. Reyes*, No. 1-04-3342 (2006) (unpublished order under Illinois Supreme Court Rule 23). This court found that the trial court did not abuse its discretion in sentencing Reyes because it did not ignore his rehabilitative potential, specifically noted his lack of a criminal background and sentenced him, in part, based on the seriousness of the offenses. *Id.* This court accordingly affirmed his sentence. *Id.*

¶ 9                                B. Postconviction Proceedings

¶ 10     In August 2020, Reyes filed a motion for leave to file a successive postconviction petition and attached the purported successive petition. The circuit court found that Reyes had never filed an initial petition and in turn, treated the allegedly successive filing as an initial petition. In relevant part, Reyes' petition claimed that his 75-year sentence was unconstitutional, as applied to him, under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). Reyes argued that scientific studies demonstrated that the brain continued to develop beyond the age of 18, and thus, his 19-year-old brain was still developing and similar to that of a juvenile when he committed his offenses. According to Reyes, this fact made him less culpable for the offenses than a fully developed adult and provided him with enhanced rehabilitative potential.

¶ 11     Reyes attached various evidence to his petition as support, including multiple articles on the development of the brain in emerging adults and a report prepared by Dr. James Garbarino, a developmental psychologist associated with Loyola University Chicago, that provided a developmental history of Reyes based on his social background. Dr. Garbarino noted numerous life experiences of Reyes that likely affected his maturity at the time of the shooting. For one, and contrary to what Reyes reported in his presentence investigative report, he told Dr. Garbarino that he grew up in a dysfunctional and abusive family with his father being a violent alcoholic. Additionally, both of his parents worked long hours, resulting in him being unsupervised for

prolonged periods of time, which led to his involvement in gangs and him witnessing violence at a young age. Dr. Garbarino concluded that Reyes was not permanently incorrigible due to his background. Reyes also attached his own affidavit detailing his childhood experiences, affidavits from his mother and sister corroborating his experiences, and certificates he earned while in prison.

¶ 12    The circuit court docketed Reyes' petition, advanced it to second-stage proceedings and appointed the public defender to represent him. Initially, Reyes' postconviction counsel filed an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate and did not make any changes to his petition. Reyes' case, however, was re-assigned to another attorney in the public defender's office. Thereafter, the State filed a motion to dismiss his petition based, in part, on his proportionate penalties clause claim being barred by *res judicata* because he raised a substantially similar claim on direct appeal.

¶ 13    In March 2024, Reyes' second postconviction counsel filed a Rule 651(c) certificate. Reyes also filed a supplement to his *pro se* postconviction petition, raising an additional claim that his trial counsel was ineffective for failing to present mitigating evidence during his sentencing hearing to show that he was more like a juvenile than an adult. According to Reyes, his trial counsel should have presented evidence of his lengthy history of abuse, the pervasive dysfunction in his home and his history of being exposed to violence due to gang activity in his neighborhood. Reyes included new affidavits from his mother and sister, who averred that, while they spoke with his trial counsel, the extent of their conversations was about his payment. In response, the State filed a supplemental motion to dismiss arguing for dismissal of Reyes' ineffective assistance of counsel claim based on *res judicata*, untimeliness and lack of merit.

¶ 14    In May 2024, the circuit court entered a written order on the State's motion to dismiss. In relevant part, the court found that *res judicata* barred Reyes' proportionate penalties clause claim.

With respect to his ineffective assistance of counsel claim, the court found that Reyes had not shown his sentence would have been different had his counsel presented mitigating evidence given the seriousness of the offenses. The court rejected Reyes' other challenges and granted the State's motion to dismiss.

¶ 15    This appeal followed.

¶ 16                                II. ANALYSIS

¶ 17                   A. Proportionate Penalties Clause Claim

¶ 18    Reyes first contends that the circuit court erred in dismissing his proportionate penalties clause claim where he made a substantial showing that his 75-year sentence was unconstitutional, as applied to him.

¶ 19    The proportionate penalties clause provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A sentence violates the clause if "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." (Internal quotation marks omitted.) *People v. Hilliard*, 2023 IL 128186, ¶ 20. Reyes posits that his sentence violated the clause because his petition substantially showed that, at the time of his offenses, his childhood and age rendered his brain similar to that of a juvenile rather than adult, resulting in him being less culpable for the offenses. In turn, his 75-year sentence is cruel, degrading or so wholly disproportionate to the offenses as to shock the community's moral sense. As a result, Reyes argues that his petition should be advanced for an evidentiary hearing.

¶ 20    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)) provides a three-stage process for a defendant who alleges that he has suffered a substantial deprivation of his constitutional rights. *People v. Cotto*, 2016 IL 119006, ¶ 26. At the second stage of proceedings,

where this case was dismissed, the State may move to dismiss the petition. *People v. Dupree*, 2018 IL 122307, ¶ 28. "The dismissal of a postconviction petition is warranted at the second stage of the proceedings only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *People v. Agee*, 2023 IL 128413, ¶ 69. A "substantial showing *** is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." (Internal quotation marks omitted.) *Dupree*, 2018 IL 122307, ¶ 29. The defendant bears the burden to make the substantial showing. *People v. Domagala*, 2013 IL 113688, ¶ 35. During second-stage proceedings, the circuit court must accept all factual allegations of the petition and supporting affidavits not rebutted by the trial record as true. *Agee*, 2023 IL 128413, ¶ 69. We review the court's dismissal at the second stage *de novo*. *Id.* ¶ 34.

¶ 21     As it did below, the State argues that Reyes' as-applied challenge under the proportionate penalties clause is barred by *res judicata* because this court already resolved a similar challenge to his sentence on direct appeal. The purpose of the Act is to allow a defendant to challenge constitutional issues related to his "conviction or sentence that were not, and could not have been, determined on direct appeal." *People v. Barrow*, 195 Ill. 2d 506, 519 (2001). In turn, "issues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*." *People v. Davis*, 2014 IL 115595, ¶ 13.

¶ 22     The recent case, *People v. Starnes*, 2025 IL App (1st) 232277-U, is instructive. There, a defendant was convicted of first-degree murder, an offense she committed in 2001 as an 18-year-old, and sentenced to 50 years' imprisonment. *Id.* ¶¶ 3-7. On direct appeal, the defendant claimed that the trial court sentenced her excessively, and thus abused its discretion, because it failed to adequately consider her youth, background, lack of criminal history and rehabilitative potential.

*Id.* ¶¶ 8, 21. The appellate court, however, affirmed her sentence. *Id.* ¶ 8. Thereafter, the defendant filed a postconviction petition, claiming that her sentence violated the proportionate penalties clause, as applied to her, and that substantial mitigating evidence, namely an abusive childhood, was not presented by her trial counsel during her sentencing hearing, resulting in counsel providing ineffective assistance. *Id.* ¶¶ 9-10, 13, 22. On the State's motion, the circuit court dismissed her petition. *Id.* ¶¶ 12-15.

¶ 23    The defendant appealed and contended that she made a substantial showing that her sentence violated the proportionate penalties clause, as applied to her. *Id.* ¶ 16. In finding that *res judicata* barred her challenge, the appellate court observed that, on direct appeal, she argued that the trial court's sentence was excessive, and thus an abuse of discretion, because it did not adequately consider her background, youth, lack of criminal history and rehabilitative potential. *Id.* ¶¶ 22, 24. Although the defendant attempted to distinguish her excessive-sentencing challenge on direct appeal from her proportionate-penalties-clause challenge in postconviction proceedings, the court rejected her attempt to reframe the sentencing claim and concluded that her postconviction claim, "framed as an as-applied proportionate penalties clause claim and supported by additional mitigation evidence, raises essentially the same claim" as on direct appeal. *Id.* In the present case, like *Starnes*, Reyes challenged his sentence on direct appeal as excessive, and thus an abuse of discretion, in light of his age at the time of the offenses, rehabilitative potential, lack of a criminal background and expression of remorse. Contrary to Reyes' argument otherwise, his postconviction claim, framed as an as-applied proportionate penalties clause challenge and supported by additional mitigation evidence, lodges, in essence, the same claim he raised on direct appeal. See *People v. Easley*, 192 Ill. 2d 307, 329 (2000) ("A petitioner cannot obtain relief under the Act by rephrasing in constitutional terms issues which were previously addressed ***.")

¶ 24    Nevertheless, relying on *People v. Blalock*, 2022 IL 126682, Reyes posits that the vast majority of the evidence supporting his proportionate penalties clause claim did not exist or was unavailable to him at the time of his sentencing or direct appeal, thereby overcoming any procedural hurdles. In *Blalock*, a coerced confession case, our supreme court asserted that where evidence of a pattern and practice of police misconduct is part of the factual basis of a defendant's coerced confession claim, that evidence's previous unavailability can establish the cause necessary to file a successive postconviction petition. *Id.* ¶¶ 39-46.

¶ 25    But this court has distinguished *Blalock* from the instant circumstances. See *People v. McGee*, 2025 IL App (1st) 231591-U, ¶ 35 (observing that "[a]lthough [the] defendant may now have the science to back *** up" his proportionate penalties clause claim, the "defendant could have summoned the facts about his own childhood experiences and history concerning his upbringing and development."). The evidence about Reyes' upbringing, in particular his abusive childhood, was available to him at the time of sentencing, but for some reason, he chose to inform the probation officer responsible for creating his presentence investigative report that he had a "good" childhood, was never the victim of abuse or neglect, and had a good relationship with his father. Although Reyes raises various reasons why he failed to disclose this information, including not recognizing it until after speaking with Dr. Garbarino and not understanding the purpose of the report, these justifications cannot overcome *res judicata*. See *Starnes*, 2025 IL App (1st) 232277-U, ¶ 23 (noting in the presentence investigative report, the defendant reported having a " 'good' " childhood, but she claimed the opposite in her postconviction petition, and while she "posits various reasons why she may not have wanted to disclose her experience with abuse, those reasons are insufficient to overcome the bar of *res judicata*").

¶ 26    Reyes also highlights *People v. Green-Hosey*, 2025 IL App (2d) 240284, ¶¶ 1-7, where the appellate court affirmed the circuit court's grant of a new sentencing hearing for a defendant, who had committed first-degree murder and armed robbery as an 18-year-old and been sentenced to 105 years' imprisonment, following a third-stage evidentiary hearing. But *Green-Hosey* did not involve *res judicata*, and therefore, the decision is inapposite. Consequently, because Reyes' challenge to his sentence was raised and decided on direct appeal, the circuit court properly found his postconviction petition's proportionate penalties clause challenge barred by *res judicata*. See *Starnes*, 2025 IL App (1st) 232277-U, ¶ 24.

¶ 27                                B. Ineffective Assistance of Counsel Claim

¶ 28    Reyes next contends that his trial counsel provided ineffective assistance during his sentencing hearing because counsel failed to present any scientific research on the development of the brains of young adults and never investigated his childhood. Instead, according to Reyes, his counsel failed to present any mitigating evidence and never discussed his age as a mitigating factor.

¶ 29    In an ineffective assistance of counsel claim, the defendant must satisfy the standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Dupree*, 2018 IL 122307, ¶ 44. To prevail on such a claim, the defendant must show that his trial counsel's performance was deficient and the deficiency prejudiced him. *People v. Pingelton*, 2022 IL 127680, ¶ 53. Specific to second-stage postconviction proceedings, the defendant must make a substantial showing "that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Id.* ¶¶ 53, 63. Both prongs of the *Strickland* test must be satisfied to prevail. *Id.* ¶ 53.

¶ 30    Although Reyes asserts that his trial counsel performed deficiently for failing to present mitigating evidence in the nature of his dysfunctional and abusive childhood, he fails to demonstrate anyway his counsel would have reasonably known about his childhood. In affidavits from his mother and sister that were included as part of his supplemental petition, both of them documented Reyes' troubled childhood. They also asserted that Reyes' trial counsel never spoke to them about the case and that, when they spoke, counsel was only concerned with his payments. "[C]ounsel has a duty to investigate potential sources of mitigation evidence, or to have a reason not to make such an investigation." *People v. Griffin*, 178 Ill. 2d 65, 86 (1997). Taking the assertions in the affidavits of Reyes' mother and sister as true that counsel never spoke to them about his childhood, as we must during second-stage proceedings because they are not rebutted by the trial record (see *Agee*, 2023 IL 128413, ¶ 69), counsel had a valid reason not to inquire with them about Reyes' childhood as potential mitigating evidence.

¶ 31    As previously discussed, in Reyes' presentence investigative report, he reported that his childhood was "good," he never was the victim of abuse or neglect, and he had a good relationship with his father. Counsel had no reason to inquire with Reyes, his mother or his sister about his childhood given the representations he made in his presentence investigative report. See *Starnes*, 2025 IL App (1st) 232277-U, ¶ 27 (the defendant did not make a substantial showing of ineffective assistance of counsel based on counsel failing to introduce evidence of his childhood abuse where "[t]he presentence investigation report contained no information regarding the defendant's history of abuse, and there is no other information in the record to suggest that trial counsel would have been aware of this evidence"). As to Reyes' claim that counsel failed to present any scientific research at his sentencing hearing, he points to no such evidence available to counsel at the time and even concedes that such evidence was not developed "for about another decade plus." When

evaluating a trial counsel's performance, we must analyze it from the perspective of counsel in the moment rather than in hindsight. *People v. Bailey*, 232 Ill. 2d 285, 296 (2009). Counsel cannot be deemed ineffective for failing to present scientific evidence not yet developed.

¶ 32 During Reyes' sentencing hearing, his trial counsel asked the trial court to review the evidence in the presentence investigative report, which documented his age at the time of the offenses. See *Griffin*, 178 Ill. 2d at 87 ("Defense counsel cannot be faulted for failing to introduce mitigation evidence that was already contained in the [presentence investigative] report."). During argument, counsel mentioned Reyes' present age, and then focused on his lack of a criminal history and the sympathy shown by Munoz's fiancée toward Reyes' family from her victim impact statement. By highlighting the victim impact statement, where Munoz's fiancée acknowledged that Reyes' family, including his daughter, was also losing someone and his lack of a criminal history, counsel reasonably focused on the two facts that provided Reyes the best chance at leniency from the court. To this end, counsel made a strategic decision on how to argue for the most lenient sentence, and as a matter of strategy, it generally cannot form the basis of an ineffective assistance of counsel claim. See *People v. Patterson*, 217 Ill. 2d 407, 441 (2005). Because counsel acted reasonably during Reyes' sentencing hearing, counsel had a valid basis not to inquire any further into Reyes' childhood given what he represented in the presentence investigative report and counsel cannot be faulted for not introducing evidence of science not yet developed, Reyes has failed to make a substantial showing that his counsel performed deficiently, and in turn, was ineffective.

¶ 33                                    III. CONCLUSION

¶ 34 For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 35 Affirmed.