2026 IL App (1st) 241317-U

SECOND DIVISION
May 26, 2026

No. 1-24-1317

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 94 CR 7322 |
| | ) | |
| MICHAEL SAPP, | ) | Honorable |
| | ) | Arthur Willis, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court.
Justices Ellis and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1  *Held***:**  We affirm the circuit court's dismissal of defendant's postconviction petition at the second stage where both untimeliness and *res judicata* bar defendant's claim. Further, postconviction counsel did not provide unreasonable assistance.

¶ 2  Defendant Michael Sapp appeals from the circuit court's second-stage dismissal of his postconviction petition (725 ILCS 5/122-1 *et seq.* (West 2018)) challenging the circuit court's

imposition of a natural life sentence after it found him guilty of (1) the 1994 murder of Shawnte Graham, and (2) the intentional homicide of Graham's unborn child. On appeal, he argues that his natural life sentence violates the Illinois Constitution's proportionate penalties clause (Ill. Const. 1970, art. I, § 11), and, alternatively, that his postconviction counsel provided unreasonable assistance. For the following reasons, we affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4     In January of 1994, Sapp and Weldon May, a United States Navy recruiter, devised a plan to terminate Shawnte Graham's pregnancy. Graham was a Navy recruit who had named May as the father of her unborn child. In exchange for terminating the pregnancy, May was to help Sapp bypass the Navy's eyesight requirement so that he would be eligible to enlist.

¶ 5     On February 15, 1994, Sapp entered Graham's Chicago apartment by posing as a maintenance man, held the apartment's other occupants at gunpoint, and shot and killed Graham. Graham was approximately eighteen weeks pregnant at the time of her death; her fetus died from the same gunshot wound. Police subsequently apprehended Sapp on February 22, 1994, and charged him with first degree murder of Graham, intentional homicide of an unborn child, home invasion, aggravated unlawful restraint, and other offenses. Approximately two years later, the matter proceeded to a bench trial.

¶ 6     At trial, the circuit court found Sapp guilty of first degree murder, intentional homicide of an unborn child, home invasion, and armed robbery.

¶ 7     At the sentencing hearing, a forensic psychiatrist testified in mitigation that Sapp suffered from dependent personality disorder, bipolar disorder, and alcohol dependence. According to the

_____

[1]The parties completed briefing in November of 2025. However, the original authoring justice's illness delayed the resolution of this appeal. To accelerate the resolution of this matter, the Court recently reassigned the case to the panel indicated herein.

psychiatrist, these conditions impaired Sapp's judgment and rendered him susceptible to May's influence.

¶ 8    After considering Sapp's age, character, mental health, and rehabilitative potential, the court found Sapp eligible for the death penalty, but declined to impose it. On January 30, 1997, the court sentenced Sapp to natural life in prison for the first degree murder of Graham with concurrent and consecutive terms for the remaining counts.

¶ 9    Sapp filed a direct appeal, arguing, as relevant here, that his natural life sentence violated the proportionate penalties clause of the Illinois Constitution. See Ill. Const. 1970, art. I, § 11. He argued that his young age, susceptibility to manipulation, severe depression, and dependent personality disorder all impaired his judgment. He also pointed out he had no significant criminal history. On November 29, 1998, the appellate court affirmed.

¶ 10    On December 5, 2018, Sapp filed a *pro se* postconviction petition. This was approximately 18.5 years late, and he conceded as much.[2] Nonetheless, he argued that his natural life sentence was unconstitutional as applied to him because he was 19 years old at the time of the offense and that, under newly developed neuroscience showing that adolescent brain development continues into the mid-twenties, the circuit court's failure to consider his neurological and psychological underdevelopment rendered his sentence unconstitutional. Based on this, Sapp's petition advanced to the second stage, at which time the circuit court appointed postconviction counsel. Counsel filed a Rule 651(c) certificate affirming that she had consulted with Sapp, examined the record, and concluded that the *pro se* petition adequately presented his claims. The State moved to dismiss,

---

[2]The postconviction petition was due six months after the conclusion of direct appeal proceedings. The Illinois Supreme Court denied leave to appeal on December 1, 1999, making the petition due on June 1, 2000. Sapp did not file his petition until December 5, 2018. The period between June 1, 2000, and December 5, 2018, is approximately 18 years and 6 months, or 18.5 years.

arguing that Sapp's petition was meritless because *Miller v. Alabama* applies only to juveniles under 18 and therefore provides no basis for relief for Sapp as a 19-year-old emerging adult. Additionally, even under the proportionate penalties clause, Sapp failed to make a valid as-applied challenge because the sentencing court had expressly considered his age, rehabilitative potential, and all relevant mitigating factors before imposing a discretionary life sentence.

¶ 11     At the dismissal hearing, defense counsel argued that the court should deny the State's motion as a matter of law on several grounds. She contended that the State's reliance on *Moore* was misplaced because that decision concerned successive postconviction petitions, not initial petitions like Sapp's, and that the higher cause-and-prejudice standard did not apply.

¶ 12     She also argued that Sapp's life sentence was mandatory, not discretionary, because his convictions for both first degree murder and intentional homicide of an unborn child triggered the mandatory life sentence provision under 730 ILCS 5/5-8-1(b).

¶ 13     On the merits, she urged the court to recognize an as-applied proportionate penalties challenge grounded in the evolving neuroscience on adolescent brain development, arguing that the science supporting elimination of mandatory life sentences for those under 18 applied equally to Sapp at age 19. She noted that at the sentencing court in 1997, Sapp had the benefit of mitigation evidence and Dr. Hardy's testimony, but he lacked the neurological science publications now available. The State conceded that the cause-and-prejudice test did not apply.

¶ 14     The circuit court granted the State's motion, finding that Sapp's sentence was discretionary (rather than mandatory) and that, under *People v. Hilliard*, 2023 IL 128186, *Miller*-based proportionate penalties challenges are available only to defendants serving mandatory life sentences. Essentially, because Sapp received a discretionary life sentence, his proportionate penalties challenge automatically failed.

¶ 15    Sapp appeals.

¶ 16                              II. ANALYSIS

¶ 17    On appeal, Sapp argues that his natural life sentence is unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution. Ill. Const. 1970, art. I, § 11. Alternatively, he contends that postconviction counsel provided unreasonable assistance.

¶ 18                      A. The Post-Conviction Hearing Act

¶ 19    The Post-Conviction Hearing Act (the "Act") provides a mechanism for a criminal defendant to assert that his conviction or sentence resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1(a) (West 2018)). Proceedings under the Act are collateral to the direct appeal and do not afford defendants a forum to relitigate issues that were or could have been raised on direct appeal. *People v. Coleman*, 168 Ill. 2d 509, 522 (1995). At the second stage of postconviction proceedings, the circuit court must determine whether the petition and accompanying documentation make a "substantial showing" of a constitutional violation; if the petitioner succeeds, his petition advances to the third stage. *People v. Domagala*, 2013 IL 113688, ¶¶ 33-34.

¶ 20    We review a second-stage dismissal *de novo*. *People v. Sanders*, 2016 IL 118123, ¶ 31. We may affirm the circuit court's judgment on any basis in the record, regardless of the reasoning or grounds the circuit court relied upon. *People v. Harvey*, 379 Ill. App. 3d 518, 521 (2008).

¶ 21                      B. Proportionate Penalties Clause

¶ 22    The doctrine of *res judicata* bars Sapp's claim. *Res judicata* prevents a defendant from obtaining another hearing on a claim already fully adjudicated in prior proceedings. *People v. Barrow*, 195 Ill. 2d 506, 529 (2001). In his direct appeal, Sapp argued that his natural life sentence violated the Illinois proportionate penalties clause because he was young at the time of the offense,

suffered from mental illness, was susceptible to manipulation by others, lacked a significant criminal history, and that the circuit court failed to give sufficient weight to his rehabilitative potential. This court rejected the claim. Sapp now attempts to advance the same claim: he argues that his underdeveloped adolescent brain rendered him constitutionally unsuitable for a life sentence. This is materially the same claim, although he frames it through the lens of *Miller v. Alabama*, 567 U.S. 460 (2012), and more recent neuroscience. Sapp essentially seeks to repackage that same youth-based argument in the language of neuroscience

¶ 23    Our supreme court addressed precisely this situation in *People v. Clark*, 2023 IL 127273, ¶ 66. It held that *res judicata* bars a proportionate penalties clause claim where the defendant "invoke[s] the principles embodied in the proportionate penalties clause while emphasizing the mitigating effect of his intellectual disabilities" on direct appeal and "now simply seeks to rephrase the very same, previously addressed issue in light of *Miller*." Similarly, in *People v. Dorsey*, 2021 IL 123010, ¶ 72, the Illinois Supreme Court applied *res judicata* where "defendant raised a proportionate penalties claim [on direct appeal], arguing that the trial court failed to adequately consider his age and rehabilitative potential." That is the same argument Sapp advanced in 1998 and advances again now.

¶ 24    Sapp's "new evidence," which includes affidavits and scientific articles on emerging-adult brain development, does not extinguish the applicability of *res judicata*. The new materials are "largely cumulative to or merely add to the same baseline evidence and argument presented at the sentencing hearing related to his age at the time of the offense." See *People v. Reyes*, 2025 IL App (1st) 241172-U, ¶ 25 (rejecting same argument where additional evidence on emerging-adult brain development was "largely available at sentencing"). Sapp was 19 at the time of the offense. At the time of sentencing, the court duly considered his susceptibility to peer pressure and the mitigating

6

dimensions of his youth. The new scientific framing does not transform this already-adjudicated claim into a new one. Accordingly, his claim fails.

¶ 25    Moreover, Sapp's proportionate penalties argument fails for a second independent reason: timeliness. Where a defendant does not petition for a writ of certiorari, he must file any postconviction petition within six months after the conclusion of direct appeal proceedings. 725 ILCS 5/122-1(c) (West 2018). Direct review concluded no later than December 1, 1999, when our supreme court denied leave to appeal. *People v. Sapp*, 186 Ill. 2d 585 (1999) (table). Sapp did not file his petition until December 5, 2018, which was nearly 19 years late. In fact, Sapp conceded his petition was untimely.

¶ 26    The limitations period is excused only where a defendant can show lack of culpable negligence. 725 ILCS 5/122-1(c) (West 2018). Sapp argues that *Miller* and *Davis* provide "retroactive" law that excuses the delay. This argument is without merit. Both *Miller* and *Davis* addressed the Eighth Amendment rights of juvenile offenders; that is, they involved defendants who were under the age of 18 when they committed the offenses. As our supreme court has made clear, those cases do not apply to adult offenders such as Sapp, who was 19 years old when he murdered Graham. See *People v. Harris*, 2018 IL 121932, ¶ 61. Moreover, "*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders." *Clark*, 2023 IL 127273, ¶ 93. Because the legal theory underlying Sapp's proportionate penalties challenge was available well before 2018, Sapp has failed to show the delay was not due to his culpable negligence.

¶ 27    Based on these two independent grounds, we find Sapp's challenge to his natural life sentence unavailing.

¶ 28                              C. Unreasonable Assistance

¶ 29    Alternatively, Sapp contends that postconviction counsel provided unreasonable assistance by failing to amend his petition to more fully develop the proportionate penalties claim and to supplement the factual record concerning his developmental maturity and postconviction rehabilitation.

¶ 30    There is no constitutional right to assistance of counsel during postconviction proceedings. *People v. Cotto*, 2016 IL 119006, ¶ 29. Under the Act, postconviction counsel must provide the defendant only with a "reasonable level of assistance." *Id.*, ¶ 30. An attorney renders objectively unreasonable performance when he or she commits errors so serious that the attorney essentially stops functioning as the counsel that the United States and Illinois constitutions guarantee. *People v. Smith*, 2023 IL App (1st) 210900-U, ¶ 24. Under Illinois Supreme Court Rule 651(c), appointed postconviction counsel must: (1) consult with the defendant to ascertain his contentions of deprivation of constitutional rights; (2) examine the record of the circuit court proceedings; and (3) amend the *pro se* petition where necessary for an adequate presentation of defendant's contentions. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Counsel demonstrates compliance by filing a certificate to that effect. *People v. Lander*, 215 Ill. 2d 577, 584 (2005).

¶ 31    Postconviction counsel here filed a facially valid Rule 651(c) certificate attesting that she consulted with Sapp, examined the record, and determined that the *pro se* petition adequately presented his claims, making amendment unnecessary. This filing created a rebuttable presumption that counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. The burden was thus on Sapp to rebut that presumption by demonstrating a failure to substantially comply with the rule's requirements. *Id.*

¶ 32    Sapp has not rebutted the presumption. He argues on appeal that counsel should have obtained expert testimony specifically connecting emerging-adult neuroscience to his individual

circumstances, secured evidence of his postconviction rehabilitation, and filed an amended petition incorporating those materials. But this argument is entirely speculative. Nothing in the record establishes what evidence, if any, was available to be obtained, let alone that counsel failed to make efforts to obtain it, so we may "reasonably presume that postconviction counsel made a concerted effort to obtain affidavits in support of the postconviction claims but was unable to do so." *People v. Johnson*, 154 Ill. 2d 227, 241 (1993). A defendant rebuts the presumption only where the record "unequivocally establishes that counsel made no effort to obtain affidavits from any of the witnesses." *Id.* at 243. Sapp has made no such showing here. The absence of an amendment does not, standing alone, rebut the presumption; it is just as consistent with counsel having investigated and concluded there was nothing viable to add. *People v. Huff*, 2024 IL 128492, ¶ 24 ("It is presumed from the lack of an amendment that there were none to be made.")

¶ 33      Sapp argues that his counsel performed unreasonably at the hearing on the State's motion to dismiss his petition. At the hearing, the State argued that our supreme court declined to extend *Miller* to offenders aged 18 and over. In so doing, the State relied on *People v. Moore*, 2023 IL 126461. Defense counsel responded orally, contending that the State's reliance on *Moore* was misplaced because that decision concerned successive post-conviction petitions, not initial petitions like Sapp's, and that the higher cause-and-prejudice standard did not apply. Sapp's point of contention now is that counsel did not respond to that argument in an amended petition, only orally. That, Sapp argues, was unreasonable. However, that counsel addressed the issue responsively at argument, rather than in a separate filing, does not demonstrate a failure to substantially comply with Rule 651(c)'s limited requirements. See *People v. Custer*, 2019 IL 123339, ¶ 38.

¶ 34    Finally, we note that Rule 651(c) does not require counsel to make any particular argument or to develop any particular line of evidence. *Id.* Counsel's obligation was to ensure that the petition adequately presented defendant's claim of constitutional deprivation. She examined the record, consulted with her client, and made the professional judgment that the *pro se* petition adequately presented his claim. We do not find any indication of unreasonable assistance.

¶ 35                                  III. CONCLUSION

¶ 36    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.